31

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-1 MASHIYAT RASHID
D-2 YASSER MOZEB
D-3 SPILIOS PAPPAS
D-4 ABDUL HAQ
D-5 JOSEPH BETRO
D-6 TARIQ OMAR
D-7 MOHAMMED ZAHOOR

Defendants.
_______________________________/

Case:2:17-cr-20465
Judge: Hood, Denise Page
MJ: Whalen, R. Steven
Filed: 07-06-2017 At 04:18 PM
INDI USA V. SEALED MATTER (DA)

VIO: 18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)-(B)
18 U.S.C. § 1957

# INDICTMENT

THE GRAND JURY CHARGES:

## General Allegations

At all times relevant to this Indictment:

### The Medicare Program

1. The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Medicare has four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4. Specifically, Part A of the Medicare program covered inpatient hospital services, home health and hospice care, and skilled nursing and rehabilitation.

5. Part B of the Medicare program covered the cost of physicians' services, medical equipment and supplies, and diagnostic laboratory services. Specifically, Part B covered medically necessary physician office services, outpatient physical therapy services, nerve conduction, and nerve block injections, including facet joint injections. Part B also covered services that were provided in connection with a laboratory testing facility, including urine drug testing.

6. National Government Services ("NGS") administered the Medicare Part A program for claims arising in the State of Michigan. Wisconsin Physicians Service ("WPS") administered the Medicare Part B program for claims arising in the State of Michigan. CMS contracted with NGS to receive, adjudicate, process, and pay certain Part B claims, including medical services related to home health services. CMS contracted with WPS to receive, adjudicate, process, and pay certain Part B

claims, including medical services related to physician office services, outpatient physical therapy services, and nerve block injections, including facet joint injections, as well as services that were provided in connection with a laboratory testing facility, including urine drug testing.

7. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the State of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC as the Zone Program Integrity Contractor ("ZPIC"). The ZPIC is a contractor that investigates fraud, waste, and abuse. Cahaba was replaced by AdvancedMed in May 2015.

8. Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a Medicare beneficiary. This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

9. Upon certification, the medical provider, whether a clinic, physician, or other health care provider that provided services to Medicare beneficiaries, was able to apply for a Medicare Provider Identification Number ("PIN") for billing purposes. In its enrollment application, a provider was required to disclose to Medicare any person or company who held an ownership interest of 5% or more or who had managing control of the provider. A health care provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for

reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider.

10. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services. When an individual medical provider was associated with a clinic and medically necessary services were provided at that clinic's location, Medicare Part B required that the individual provider numbers associated with the clinic be placed on the claim submitted to the Medicare contractor.

11. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

12. Health care providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered. Medicare would not pay claims procured through kickbacks and bribes.

13. Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare requires complete and accurate patient medical records so that Medicare may verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider.

14. Under Medicare Part B, physician office visit services, outpatient physical therapy services, nerve conduction, and nerve block injections, including facet joint injections, were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury. Individuals providing these services were required to have the appropriate training, qualifications, and licenses to provide such services. Providers were required to: (1) document the medical necessity of these services; (2) document the date the service was performed; (3) identify the provider who performed the service; and (4) identify the clinic,

physician office, or group practice where the provider provided the service. Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers. To be reimbursed from Medicare for physician office visit services, outpatient physical therapy services, nerve conduction, and nerve block injections, including facet joint injections, the services had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare. Providers were required to maintain patient records to verify that the services were provided as represented on the claim form to Medicare. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

15. Under Medicare Part B, for a laboratory to properly bill and be paid by Medicare for laboratory testing, including urine drug testing, the patient must, among other things, qualify for the testing, including urine drug testing, under Medicare's established rules and regulations. The testing also must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim is submitted for reimbursement to Medicare.

16. For a laboratory to properly bill and be paid by Medicare for urine drug testing, the urine drug testing must be both reasonable and medically necessary. For example, urine drug testing is medically necessary if the patient presents to a

physician with a suspected drug overdose. Regular, routine, or recreational drug screenings, however, are not reasonable or medically necessary. Further, the patient's medical record must include documentation that fully supports the reasonableness of and medical necessity for the urine drug testing.

17. Under Medicare Part A and Part B, home health care services were required to be reasonable and medically necessary to the treatment of the patient's illness or injury. Reimbursement for home health care services required that a physician certified the need for services and established a Plan of Care. Home health care services that were not certified by a physician or were not provided as represented were not reasonable and necessary. Medicare Part B covered the costs of physicians' services, including physician home visits, physician certification and recertification of home health care services, and physician supervision of home health care services. Generally, Medicare Part B covered these costs only if, among other requirements, they were medically necessary, ordered by a physician, and not induced by the payment of remuneration.

18. Medicare coverage for home health care services required that the following qualifying conditions, among others, be met: (a) the Medicare beneficiary is confined to the home; (b) the beneficiary needs skilled nursing services, physical therapy, or occupational therapy; (c) the beneficiary is under the care of a qualified physician who established a written Plan of Care for the beneficiary, signed by the

physician and by a Registered Nurse ("RN"), or by a qualified physical therapist if only therapy services are required from the home health agency; (d) skilled nursing services or physical therapy services are provided by, or under the supervision of, a licensed RN or physical therapist in accordance with the Plan of Care; and (e) the services provided are medically necessary.

19. To receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

**The Physician Businesses**

20. Global Quality Inc. ("Global Quality") was a Michigan corporation doing business at 3800 Woodward Ave., Ste. 1100, Detroit, Michigan. Global Quality was enrolled as a participating provider with Medicare and submitted claims to Medicare.

21. Aqua Therapy and Pain Management, Inc. ("Aqua Therapy") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 305, Detroit, Michigan. Aqua Therapy was enrolled as a participating provider with Medicare and submitted claims to Medicare.

22. Tri-County Physician Group, P.C. ("Tri-County Physicians") was a Michigan corporation doing business at 3800 Woodward Ave., Ste. 1100, Detroit,

Michigan, 3011 West Grand Blvd., Ste. 305 & 307, Detroit, Michigan, and 24001 Orchard Lake Rd., Ste. 140A, Farmington, Michigan. Tri-County Physicians was enrolled as a participating provider with Medicare and submitted claims to Medicare.

23. Tri-State Physician Group, P.C. ("Tri-State Physicians") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 306, Detroit, Michigan, 24001 Orchard Lake Rd., Ste. 140A, Farmington, Michigan, and 2100 W. Alexis Rd., Ste. B3, Toledo, Ohio. Tri-State Physicians was enrolled as a participating provider with Medicare and submitted claims to Medicare.

24. New Center Medical, P.C. ("New Center Medical") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 308, Detroit, Michigan. New Center Medical was enrolled as a participating provider with Medicare and submitted claims to Medicare.

**The Laboratory**

25. National Laboratories, Inc. ("National Laboratories") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 310, Detroit, Michigan and 2100 West Alexis Rd., Ste. B-1, Toledo, Ohio. National Laboratories was enrolled as a participating provider with Medicare and submitted claims to Medicare.

**The Massage Therapy and Healthcare Management Company**

26. Tri-County Wellness, Inc. ("Tri-County Wellness") was a Michigan corporation doing business at 3031 W. Grand Blvd., Ste. 506, Detroit, Michigan and

900 Wilshire Dr., Ste. 202, Troy, Michigan.

**Defendants and Other Entities and Individuals**

27. Defendant **MASHIYAT RASHID**, a resident of Oakland County, controlled, owned, or operated Global Quality, Aqua Therapy, Tri-County Physicians, Tri-State Physicians, New Center Medical, National Laboratories, and Tri-County Wellness, collectively referred to as the Tri-County Network.

28. Defendant **YASSER MOZEB**, a resident of Oakland County, was paid by **RASHID** and received payments from Global Quality and Tri-County Wellness. MOZEB opened bank accounts in the name of **ISN Marketing** to receive these payments.

29. Defendant **SPILIOS PAPPAS**, a resident of Lucas County, Ohio, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Tri-County Physicians and Tri-State Physicians.

30. Defendant **ABDUL HAQ**, a resident of Washtenaw County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Aqua Therapy, Tri-County Physicians and Tri-State Physicians.

31. Defendant **JOSEPH BETRO**, a resident of Oakland County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Tri-County Physicians and New Center Medical.

32. Defendant **TARIQ OMAR**, a resident of Oakland County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Tri-County Physicians.

33. Defendant **MOHAMMED ZAHOOR**, a resident of Oakland County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Tri-County Physicians

34. Home Health Agency 1, Home Health Agency 2, and Home Health Agency 3 were home health companies in Wayne and Oakland Counties.

35. Home Health Agency Owner 1, a resident of Oakland County, controlled, owned, or operated Home Health Agency 1.

36. Diagnostic Company 1 and Diagnostic Company 2 were diagnostic companies in Oakland County.

37. Diagnostic Company Owner 1, a resident of Oakland County, controlled, owned, or operated Diagnostic Company 1 and Diagnostic Company 2.

38. Management Company 1 was a management company in Wayne County.

39. Physician 1, a resident of Oakland County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Tri-County Physicians.

**COUNT 1**
**(18 U.S.C. § 1349—Health Care Fraud Conspiracy)**
**D-1 MASHIYAT RASHID**
**D-2 YASSER MOZEB**
**D-3 SPILIOS PAPPAS, MD**
**D-4 ABDUL HAQ, MD**
**D-5 JOSEPH BETRO, MD**
**D-6 TARIQ OMAR, MD**
**D-7 MOHAMMED ZAHOOR, MD**

40. Paragraphs 1 through 39 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

41. From in or around December 2008, and continuing through in or around the Present, the exact dates being unknown to the Grand Jury, in Wayne County, the Eastern District of Michigan, and elsewhere, the defendants, **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, and **MOHAMMED ZAHOOR**, did willfully and knowingly, combine, conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury, including Home Health Agency Owner 1, Diagnostic Company Owner 1, and Physician 1, to commit certain offenses against the United States, namely: to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and

property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

**Purpose of the Conspiracy**

42. It was a purpose of the conspiracy for defendants **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, and **MOHAMMED ZAHOOR**, along with Home Health Agency Owner 1, Diagnostic Company Owner 1, Physician 1, and other co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

**Manner and Means**

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

43. On or about February 1, 2006, and July 7, 2008, **MASHIYAT RASHID** falsely certified to Medicare that Global Quality would comply with all Medicare rules and regulations, and federal laws, including that Global Quality would refrain from violating the federal Anti-Kickback statute.

44. On or about December 11, 2008, **MASHIYAT RASHID**, using the aka "Mosh Rashid," falsely certified to Medicare that Aqua Therapy would comply with all Medicare rules and regulations, and federal laws, including that Aqua Therapy would refrain from violating the federal Anti-Kickback statute.

45. Thereafter, **MASHIYAT RASHID, SPILIOS PAPPAS**, **ABDUL HAQ** and others submitted and caused to be submitted false and fraudulent enrollment materials to Medicare that failed to disclose the ownership interest and/or managing control of **MASHIYAT RASHID**.

46. **MASHIYAT RASHID, SPILIOS PAPPAS**, **ABDUL HAQ**, and others disguised **MASHIYAT RASHID**'s ownership interest and/or control over these provider numbers by, among other things, entering into sham agreements and making misrepresentations and omissions in the enrollment applications and claims submitted to Medicare.

47. On or about March 8, 2011, **HAQ** falsely certified to Medicare that he was the owner of Aqua Therapy. **HAQ** falsely certified to Medicare that Aqua Therapy would comply with all Medicare rules and regulations, and federal laws,

including that Aqua Therapy would refrain from violating the federal Anti-Kickback statute.

48. On or about May 10, 2011, **HAQ** falsely certified to Medicare that he was the owner of Tri-County Physicians. **HAQ** falsely certified to Medicare that Tri-County Physicians would comply with all Medicare rules and regulations, and federal laws, including that Tri-County Physicians would refrain from violating the federal Anti-Kickback statute.

49. On or about April 24, 2014, **MASHIYAT RASHID** falsely certified to Medicare that National Laboratories would comply with all Medicare rules and regulations, and federal laws, including that National Laboratories would refrain from violating the federal Anti-Kickback statute.

50. After Tri-County Physicians was suspended from Medicare on or about November 30, 2016, **PAPPAS** falsely certified to Medicare on or about December 22, 2016 that he was the owner of Tri-State Physicians and that Tri-State Physicians would comply with all Medicare rules and regulations and federal laws, including that Tri-State Physicians would refrain from violating the federal Anti-Kickback statute.

51. **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, **MOHAMMED ZAHOOR**, Physician 1, and others would prescribe

medically unnecessary controlled substances, including Oxycodone, Hydrocodone, and Opana, to Tri-County Network beneficiaries.

52. **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, **MOHAMMED ZAHOOR**, Physician 1, and others would submit and/or cause the submission of false and fraudulent claims for services purportedly provided by the Tri-County Network that were medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

53. **MASHIYAT RASHID, YASSER MOZEB**, and others devised and participated in a scheme to pay illegal kickbacks and bribes to Home Health Agency Owner 1, and others in return for referring Medicare beneficiaries to the Tri-County Network and arranging for the Tri-County Network to perform services, so that the Tri-County Network could bill Medicare for services that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

54. **MASHIYAT RASHID, YASSER MOZEB**, and others devised and participated in a scheme to receive illegal kickbacks and bribes from Home Health Agency 1, Home Health Agency 2, Home Health Agency 3, Diagnostic Company 1, Diagnostic Company 2, and other providers for referrals of Medicare beneficiaries from the Tri-County Network to these other providers so that the other providers

could bill Medicare for services that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

55. **MASHIYAT RASHID**, **YASSER MOZEB**, and others negotiated, calculated, and/or reconciled payments for illegal kickbacks and bribes, including by exchanging spreadsheets by email with employees of Home Health Agency 1 on or about May 6, 2014, July 8, 2015, and other dates.

56. **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, and **MOHAMMED ZAHOOR**, Physician 1, and others, falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of Tri-County Network medical records, including home health certifications, treatment plans, diagnostic testing orders, and other records, to support claims for home health services, urine drug testing, diagnostic testing, and other services that were obtained through illegal kickbacks and bribes, medically unnecessary; not eligible for Medicare reimbursement; and/or not provided as represented.

57. **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, **MOHAMMED ZAHOOR**, and others submitted and caused the submission of false and fraudulent claims to Medicare in an approximate amount of $131,798,368.61 million for services that

were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented as represented.

**COUNTS 2-6**
**(18 U.S.C. §§ 1347 and 2 – Health Care Fraud)**
**D-1 MASHIYAT RASHID**
**D-2 YASSER MOZEB**
**D-3 SPILIOS PAPPAS, MD**
**D-4 ABDUL HAQ, MD**
**D-5 JOSEPH BETRO, MD**
**D-6 TARIQ OMAR, MD**
**D-7 MOHAMMED ZAHOOR, MD**

58. Paragraphs 1 through 39 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

59. On or about the dates enumerated below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, and **MOHAMMED ZAHOOR**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody

and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

**Purpose of the Scheme and Artifice**

60. It was the purpose of the scheme and artifice for **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, and **MOHAMMED ZAHOOR** to unlawfully enrich themselves and their accomplices by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their accomplices.

**The Scheme and Artifice**

61. Paragraphs 43 through 57 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution of the Scheme and Artifice**

62. On or about the dates specified below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, and **MOHAMMED ZAHOOR**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program:

| Count Defendant(s) | Medicare Beneficiary | Approximate Date of Service | Description of Items Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|
| 2 RASHID MOZEB PAPPAS | B.J. | 12/17/2015 | Facet Joint Injections | $1,180.00 |
| 3 RASHID MOZEB HAQ | R.T. | 12/10/2013 | Facet Joint Injections | $1,000.00 |
| 4 RASHID MOZEB BETRO | A.P. | 12/30/2015 | Facet Joint Injections | $1,130.00 |

| Count Defendant(s) | Medicare Beneficiary | Approximate Date of Service | Description of Items Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|
| 5 RASHID MOZEB OMAR | C.W. | 12/16/2014 | Facet Joint Injections | $850.00 |
| 6 RASHID MOZEB ZAHOOR | T.S. | 12/4/2014 | Facet Joint Injections | $1,150.00 |

In violation of Title 18, United States Code, Sections 1347 and 2.

**COUNT 7**
**(18 U.S.C. § 371—Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks)**
**D-1 MASHIYAT RASHID**
**D-2 YASSER MOZEB**

63. Paragraphs 1 through 39 of the General Allegations section and Paragraphs 43 to 57 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

64. From in or around March 2012, and continuing through in or around the Present, the exact dates being unknown to the Grand Jury, in Wayne County, the Eastern District of Michigan, and elsewhere, the defendants, **MASHIYAT RASHID** and **YASSER MOZEB** did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree

with Home Health Agency Owner 1, Diagnostic Provider 1, each other, and others known and unknown to the Grand Jury:

a. to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare and Medicaid programs, in violation of Title 18, United States Code, Section 371, and to commit certain offenses against the United States, that is:

b. to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A)-(B), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person: (i) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and (ii) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and

c. to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return

for referring an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a federal health care program, that is, Medicare.

**Purpose of the Conspiracy**

65. It was a purpose of the conspiracy for **MASHIYAT RASHID**, **YASSER MOZEB**, and their co-conspirators, to unlawfully enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes to ensure that (a) Medicare beneficiaries would serve as patients in the Tri-County Network and co-conspirator providers; (b) arranging for the Tri-County Network and co-conspirator providers to perform services, including urine drug testing; and (2) submitting or causing the submission of claims to Medicare for medical items and services purportedly provided to these recruited beneficiaries.

**Manner and Means**

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

66. Paragraphs 43 to 57 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

**Overt Acts**

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in Wayne County, the Eastern District of Michigan, and elsewhere, at least one of the following overt acts, among others:

67. **MASHIYAT RASHID**, **YASSER MOZEB**, and others negotiated, calculated, and/or reconciled payments for illegal kickbacks and bribes, including by exchanging spreadsheets by email with Home Health Agency 1 on or about May 6, 2014, July 8, 2015, and other dates.

68. On or about December 1, 2014, **MASHIYAT RASHID** caused Management Company 1 to cash check 1279, in the approximate amount of $5,310, from Tri-County Wellness's bank account ending in x9562.

69. On or about February 5, 2016, **MASHIYAT RASHID** caused check number 17786 from Home Health Agency 1's bank account, in the approximate amount of $9,379.36 to be deposited into Tri-County Wellness's bank account ending in x4737.

All in violation of Title 18, United States Code, Section 371.

**COUNT 8**
**(42 U.S.C. § 1320a-7b(b)(1)(A)) – Receipt of Kickbacks in Connection with a Federal Health Care Program)**
**D-1 MASHIYAT RASHID**

70. Paragraphs 1 through 39 of the General Allegations section and Paragraphs 43 to 57 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

71. On or about the date set forth below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID** did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a federal health care program, that is, Medicare and Medicaid, as set forth below:

| Count Defendant | Approximate Date of Payment | Description | Approximate Amount |
|---|---|---|---|
| 8 RASHID | February 5, 2016 | Check No. 17786 from Home Health Agency 1 | $9,379.36 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

**COUNT 9**

**(42 U.S.C. §§ 1320a-7b(b)(2)(A)-(B)) — Payment of Kickbacks in Connection with a Federal Health Care Program)**

**D-1 MASHIYAT RASHID**

72. Paragraphs 1 through 39 of the General Allegations section and Paragraphs 43 to 57 of the Manner and Means section of Count 1of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

73. On or about the date set forth below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID** did knowingly and willfully offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, to any person to induce such person: (a) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and (b) to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service and item for which payment may be made in whole or in part under a Federal health care program, that is, Medicare, as set forth below:

| Count Defendant | Approximate Date of Payment | Description | Approximate Amount |
|---|---|---|---|
| 9 RASHID | December 1, 2014 | Check No. 1279 from Tri County Wellness bank account x9562 | $5,310.00 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A)-(B).

**COUNT 10**
**(18 U.S.C. §§ 1957 and 2—Money Laundering)**
**D-1 MASHIYAT RASHID**

74. On or about the date set forth below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID**, did knowingly engage and attempt to engage in the following monetary transactions by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the payment of funds, such property having been derived from a specified unlawful activity, that is, health care fraud.

| COUNT | DEFENDANT | DATE | TRANSACTION |
|---|---|---|---|
| 10 | MASHIYAT RASHID | October 10, 2012 | $6,600,000 wire transfer to account x4026 |

In violation of Title 18, United States Codes, Sections 1957 and 2.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;**
**18 U.S.C. §§ 982(a)(1) and (7)—Criminal Forfeiture)**

75. The allegations contained in Count 1-10 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendants **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, **MOHAMMED ZAHOOR** pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

76. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, upon being convicted of the crime charged in Count 1 of this Indictment, the convicted defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

77. Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 9 of this Indictment, the convicted defendant(s) shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

78. Pursuant to Title 18, United States Code, Section 982(a)(1), upon being convicted of the crime charged in Count 10 of this Indictment, the convicted

defendant shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property.

79. Money Judgment: Property subject to forfeiture includes, but is not limited to a forfeiture money judgment equal to:

a. At least $131,798,368.61 in United States currency, in the aggregate, or such amount as is proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of each defendants' violations as alleged in Counts 1-9 of this Indictment;

b. At least $6,600,000.00 in United States currency, or such amount as is proved in this matter, representing the total amount involved in, or traceable to the amount involved in, the defendant's violation as alleged in Count 10 of this indictment.

80. Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and/or Title 28, United States Code, Section 2461, to seek to forfeit any other property of **MASHIYAT RASHID**, **YASSER MOZEB**, **SPILIOS PAPPAS**, **ABDUL HAQ**, **JOSEPH BETRO**, **TARIQ OMAR**, **MOHAMMED ZAHOOR** up to the value of such property.

THIS IS A TRUE BILL.

s/GRAND JURY FOREPERSON
Grand Jury Foreperson

DANIEL L. LEMISCH
Acting United States Attorney

s/WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
wayne.pratt@usdoi.gov

s/JACOB FOSTER
JACOB FOSTER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 305-3520
jacob.foster@usdoj.gov

s/ALLAN MEDINA
ALLAN MEDINA
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 257-6537
allan.medina@usdoj.gov

Date: July 6, 2017

Case:2:17-cr-20465
Judge: Hood, Denise Page
MJ: Whalen, R. Steven
Filed: 07-06-2017 At 04:18 PM
INDI USA V. SEALED MATTER (DA)

| United States District Court<br>Eastern District of Michigan | **Criminal Case C** |
|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to co**

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ **Yes** ☒ **No** | **AUSA's Initials:** JMF |

**Case Title:** USA v. Mashiyat Rashid, et al

**County where offense occurred :** Oakland County, Wayne County

**Check One:** ☒ **Felony** ☐ **Misdemeanor** ☐ **Petty**

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:** ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** ***[Complete Superseding section below]***.

## Superseding Case Information

**Superseding to Case No:** ____________________ **Judge:** ____________________

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

July 6, 2017
Date

Jacob Foster,Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 305 - 3520
Fax: (313) 226 - 0816
E-Mail address: Jacob.Foster@usdoj.gov
Attorney Bar #: CA 250785

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.