UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                    CASE NO. 17-20465
                                    HON. DENISE PAGE HOOD
v.

D-1 MASHIYAT RASHID,

      Defendant.
                          /

**ORDER GRANTING DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER
AND FOR PRETRIAL RELEASE [#78] and DEFENDANT'S
MOTION FOR IMMEDIATE CONSIDERATION [#79]**

**I.    Introduction and Factual Background**

Defendant is charged, along with six other defendants, with various charges stemming from alleged Medicare care fraud in a ten-count Indictment filed on July 6, 2017. Defendant is charged in all ten counts: Conspiracy to Commit Health Care Fraud, 18 USC §1349; Health Care Fraud, 18 USC §1347; Conspiracy to Pay and Receive Health Care kickbacks, 18 USC §371: Receipt of Health Care kickbacks, 42 USC §1320 a-7b, Payment of Health Care kickbacks, 42 USC §1320 a-7b(b)(2)(A)-(B) and; Money Laundering 18 USC §1957 and 2. Defendant, who is not a doctor, is alleged to have owned and operated several medical businesses that, over the course of many years, defrauded Medicare in the approximate amount of

$131,000,000.

On July 12, 2017, Defendant was arrested, arraigned, and a detention hearing was held before Magistrate Judge Elizabeth A. Stafford. At that time, Pretrial Services recommended that Defendant be released "on a $100,000 unsecured bond with the following conditions: report as directed to Pretrial Services, surrender passport, obtain no new passport, possess no weapons, and do not participate in the direct or indirect billing of Medicare and Medicaid.[1] No testimony was offered or taken, and the hearing proceeded on proffer only. Magistrate Judge Stafford ordered Defendant detained because he is a danger to the community and a risk of flight. Magistrate Judge Stafford reasoned that:

> . . . Rashid presents a substantial risk of flight and obstruction of justice if he were released, as revealed by the nature and circumstances of the crime. The grand jury found that he owned and operated several medical businesses that, over the course of many years, defrauded Medicare, with a loss amount of about $131,000,000. Rashid and his co-conspirators did so by, among other things, prescribing addictive narcotic drugs when not medically necessary, and requiring those seeking the drugs to undergo multiple unnecessary back injections, which were then billed to Medicare. The amount of money defrauded from Medicare, the damage to the community through the distribution of addictive drugs, and the provision of medically unnecessary back injections render his alleged crimes extraordinarily serious. Moreover, Rashid is alleged to have executed his schemes with extraordinary

---

[1] By the time the Court conducted the hearings on Defendant's Motion for Revocation of Detention, Pretrial Services had learned of information that resulted in a recommendation that Defendant be detained. Specifically, Pretrial Services learned that Defendant had withdrawn $500,000 from a bank account two days before he was arrested.

deception, including by having co-conspirator doctors serve as nominee owners of his companies because it was illegal for him (a non-doctor) to own those businesses and so that Medicare would not be aware; disguising financial transactions; having other home health care businesses bill for services that were provided by Rashid's businesses (if they were provided at all), and then receiving kickback payments from those other companies; and when Medicare suspended a company in 2016, he brazenly continued his schemes by creating two new companies and changing the names on the door. Of further import, Rashid has family ties in Bangladesh, where he was born, and recently withdrew a half-million of the $10,000,000 that he is alleged to have transferred to his personal accounts over the course of the conspiracy. Rashid has shown disregard for his legal obligations and an unusual willingness and ability to adjust his schemes despite the government's awareness that he was operating illegally. He has amassed large amounts of money, and his history of disguising financial transactions and recent withdrawal of $500,000 in cash suggests that he may have hidden a significant amount. And finally, he has the ties to a foreign country and a significant motive to flee.

The six co-defendants were released on unsecured bonds with varying conditions of release.

On July 26, 2017, Defendant filed a Motion for Revocation of Detention Order and for Pretrial Release pursuant to 18 U.S.C. § 3145(b). The same day, Defendant filed a Motion for Immediate Consideration of the foregoing motion. The Government filed a written response to the Motion for Revocation, and the Court held a hearing on that Motion on August 1 and 2, 2017. Both parties filed supplemental briefs on August 3, 2017, and no additional argument was heard after the filing of the supplemental briefs.

The Court GRANTS the Motion for Revocation of Detention Order and Pretrial Release and the Motion for Immediate Consideration.

**II. Applicable Law**

The Bail Reform Act, 18 U.S.C. § 3142, ordinarily requires that a defendant be released pending trial unless there are no conditions that will reasonably assure the appearance of the person at future court proceedings and the safety of the community. *See* 18 U.S.C. § 3142(e). A court may, however, order detention of the defendant if the court finds that no set of conditions will reasonably assure the appearance of the person and the safety of the community. *See* 18 U.S.C. § 3142(f). In reaching this determination, the district court must take into account available information concerning: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release (*i.e.*, "the Section 3142(g) factors"). 18 U.S.C. § 3142(g). The district court's review of the Order of Detention is *de novo*, and the district court must determine independently whether detention is proper. *See, e.g., United States v. Montgomery*, 2010 WL 1052339, at *1 (E.D. Mich. 2010).

**III. Analysis**

It is undisputed that the allegations in the Indictment are very serious, as they

involve massive health care fraud and caused medically unnecessary and painful injections to individuals attempting to obtain narcotics. The weight of the evidence against Defendant is great. There have been proffers regarding cooperating witnesses and, perhaps, co-defendants and victims of this crime, as well as extensive documentation of the loss of a large amount of money relative to defrauding the Government's health care agency(ies). As discussed in more detail below, the history and characteristics of Defendant reflect that he has no prior convictions, has been afforded the privilege of higher education, and he supports his wife, parents, and children, including one special needs child. There are no letters of support from members of the community, though the Court does not give this much weight. The nature and seriousness of the danger posed by Defendant's release will be discussed below.

As Defendant notes, the Court must ascertain the least restrictive condition or terms of conditions that will reasonably assure the appearance of Defendant and the safety of the community, 18 U.S.C. § 3142(e); *United States v. Salerno*, 481 U.S. 739 (1987). The finding regarding reasonable assurance of appearance must be by a preponderance of the evidence and a finding of dangerousness must be "supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). Defendant contends that detention is appropriate only if the Court finds that the least restrictive condition

or combination of conditions will not <u>reasonably</u> assure his appearance and the safety of the community, 18 U.S.C. § 3142(c)(B), and that Section 3142 does not require certainty of appearance and safety of the community.

### A. Danger to the Public

Defendant contends that there is no evidence that he will be a danger to any person in the community if granted pretrial release because: (a) the Government has already stripped him of his ability to have any opportunity or means to engage in the criminal conduct he is alleged to have committed, and (b) the Court can impose a combination of conditions on him that will reasonably ensure his appearance in court.

Defendant, who is 37 years old, argues that he has been a law-abiding citizen with no contacts with the criminal justice system of any nature, nor any drug, alcohol, or mental health problems. Defendant was naturalized after coming to the United States from Bangladesh when he was nine, after living in Canada for six years. He attended the University of Michigan Business School before graduating with a bachelor's degree in Finance in 2002.

Defendant offers conditions that could be imposed to preclude his ability, opportunity, and means to endanger the public, and he notes that some events have occurred since his arrest that eliminate his opportunity to be a danger to the public:

- A. His employment at the facilities where the alleged illegal conduct is alleged to have occurred has been terminated.

B. The Court can order him to be under house arrest and Pretrial Services can electronically monitor him via a GPS tether in order to ensure that he does not leave the home except for very limited purposes, if any, as determined by the Court.

C. The Court can place him under supervision of a third party custodian(s), Mr. & Mrs. Harun Rashid (his parents) or Saima, his wife, or a combination thereof. All three of them are preparing affidavits indicating their willingness to act as third-party custodians and are willing to submit to interview(s) by Pretrial Services regarding suitability. His parents have lived in Oakland County for 20 years and his wife has lived in the area for 12 years, and none of them appear to have any contacts with the law or drug, alcohol, or mental health issues.

D. The Government has seized and effectively frozen all of Defendant's bank accounts and funds, thus preventing his access to any funds or resources.

No evidence or proffer was made at the detention hearing regarding danger to the public other than the criminal activity related to the acts alleged in the Indictment. The Government has made several arguments about Defendant's dangerousness. The Government claims that Defendant threatened other defendants or witnesses, specifically noting that Defendant was heard engaging in a conversation discussing threatening to hire someone to inflict bodily harm or violence on others. This statement allegedly was corroborated by a cooperating witness who indicated that when a former employee had threatened to blow the whistle on Defendant's fraudulent activity, Defendant responded by stating that he should hire someone to beat up the employee and break his legs. The Government also argues that Defendant

has demonstrated that he will continue his health care fraud by opening new companies under new names and cited the opening of a new laboratory in Ohio and National Labs, Inc. The Government maintains that, by doing so, Defendant was in a position to continue to direct doctors to inflict the pain of unnecessary injections upon the poor in the community.

Defendant argues that, if the conditions set forth above in A.-D. are imposed, he would not have the ability to engage in any such conduct while on pretrial release. As Defendant notes, he is not a licensed doctor himself, so he could not undertake to engage in any of the illegal medical activities alleged and, because his alleged associates also have been arrested and he would not have the ability to recruit new persons to engage in the criminal conduct alleged, he is not a danger to resume that activity.

The Court concludes that there is not clear and convincing evidence that Defendant poses a danger to the public if he is released on bond with the imposition of a number of conditions that have been proposed by Defendant and other conditions that the Court shall impose.

**B.     Flight Risk**

Defendant's parents have lived in the same house in Farmington Hills for the last 16 years. He met his 34-year old wife (Saima) when he was 21. They were

married in 2005 and have lived in West Bloomfield for the last 10 years. Saima Rashid earned a bachelor of science degree in social work recently and is pursuing a masters degree now, all at Wayne State University. They have two children, a 10-year old daughter and a 4-year old special needs brother. He has a 29-year old sister, a U.S. born citizen, who is in her medical residency in Houston, Texas, and is married to an attorney. Defendant has worked in Detroit his entire life, first working as a consultant for ISO 9000 matters, then starting an aquatherapy business in 2005. He owns a commercial building (with 20 tenants) in Detroit's New Center Area.

Defendant states that, at the detention hearing, it was alleged that he had foreign ties – but who those ties were with, and the alleged nature and strength of those ties, was not identified. The Court is now aware of the following information: Defendant's wife has family in Bangladesh that she visits, but he has little direct communication with them. Defendant states that he has an uncle (a surgeon), who lives with his family, in London, England. Defendant represents that his international travel over the last 12 years has consisted of: (1) his trip to Bangladesh to marry Saima in 2005; (2) a trip to Bangladesh in 2010 to attend the wedding of a cousin; and (3) a trip to London, England in the last year or two to attend the wedding of another cousin. Defendant also admits to travel to Mexico (and Carribean countries as part of a couple of Disney cruises) and approximately 41 trips to Canada to visit

cousins over a period of 10 years (an average of 4 visits per year). Defendant maintains that he does not own property in any foreign countries or have any overseas or offshore accounts.

While Defendant has limited visits to Bangladesh, his wife has visited her family with more regularity and for periods of up to one month at a time. There also is information that Defendant has indicated to others that his wife's family has substantial means and that could be viewed as support for his means of flight. A cooperating witness or co-defendant has stated that, when another health care professional was charged with a serious crime, Defendant commented that the other health care professional should have fled since he had the means to enjoy a substantial lifestyle abroad, all of which is relevant with respect to Defendant's risk of flight.

The Court also notes that Defendant made a $500,000 withdrawal from a bank on July 10, 2017, two days before a search of his home and his arrest. That $500,000 was packaged in a purse, plastic bag, and small travel zip bag. The money was not suspiciously taken, as Defendant notified the bank of his intention to withdraw it and then made the withdrawal. Various stories regarding the purpose of the $500,000 have been offered, including that it was for investment and/or to make payments on upgrades on the construction of his new home (which the contractor, not surprisingly,

denies). The Government argues that Defendant did not make full disclosure of all of his financial holdings to Pretrial Services at the arraignment and that there were other (empty) cash wrappers found at the house, which the suggest that Defendant's withdrawal of large sums of cash was not a one-time incident.

There are a number of things the Court finds minimally useful, such as: (a) the alleged storage lockers with money (as the Government proffered) or Defendant's acknowledgment that he has a storage locker in Commerce Township with a 2006 Range Rover; (b) the gambling proclivity of Defendant that may account for the cash wrappers and, to some extent, the separate packaging of the $500,000 cash; (c) the movie-related comments about threatening victims and other language the Government frames as indicative of Defendant's intent to flee; (d) the fact that Defendant has flown on a private jet (that he did not own or lease); and (e) the fact that Defendant did not disclose to Pretrial Services at his arraignment all of his accounts and financial information (which may be the result of the absence of time to engage in and respond to a complete interview or the absence of his attorney at the interview). The Court also notes that the Government's concern that all of Defendant's accounts have not been found only constitutes additional argument that Defendant has the means of flight. The Court further notes that Pretrial Services subsequent recommendation, that Defendant be detained, appeared to rest solely on

the fact that Defendant withdrew $500,000 from a bank account only two days before he was arrested.

There are several reasons why Defendant would not flee. First, he has parents who have a long-standing relationship to the United States, including a father who has worked and has a reputation he would like to keep in the United States. Second, if he flees he cuts of his relationship with them. Third, Defendant has a child with special needs and treatment at the level available in the United States may not be possible in other countries (though the Court does not weigh this factor significantly).

## III. Conclusion

For the reasons stated above, the Court finds that the proffers made and the documented evidence submitted do not support a finding that Defendant presents a danger to the public that cannot be addressed by conditions that reasonably assure that such acts are not carried out. The Court finds that Defendant is a risk of flight, but the Court is not convinced that there are no conditions that can reasonably assure that Defendant does not flee.

Defendant argues that, for the same reasons set forth in A.-D. on pages 6-7 of this Order, together with a number of conditions he proposed, his appearance can be reasonably assured. Defendant contends that the Government has only offered speculative argument that he has an incentive to flee but there has been no showing

that he presents a genuine risk of flight. The Court agrees that there are conditions to ensure that Defendant is not a risk of flight or a danger to the community.

Accordingly,

IT IS ORDERED that Defendant's Motion for Revocation of Detention Order and Pretrial Release [#78] is GRANTED.

IT IS FURTHER ORDERED that Defendant be released to Pretrial Services supervision with, and upon the satisfaction of, the following conditions. Defendant shall:

- (a) be subject to house arrest (except as necessary to meet with counsel and an extreme medical emergency);

- (b) be subject to electronic monitoring with GPS tether;

- (c) surrender all electronic devices capable of communicating with other persons to Pretrial Services and not access directly or indirectly any computer or the internet for any purpose, as well as allow for a search of any electronic devices at his residence;

- (d) report to Pretrial Services in person, or via telephone, as directed by the Pretrial Service officer, and as often as necessary to assure compliance with the conditions of his release;

- (e) have no contact with any co-defendants, employees, former employees or clients of any clinic or business owned or controlled by Mashiyat Rashid, or any government witnesses, except in the presence of his attorney;

- (f) surrender his credit cards and agree not to directly or indirectly seek any new lines of credit from any source, nor make any withdrawals, transfers, sales, or other disposition of any financial resources, unless

approved by Pretrial;

(g)　disclose all accounts and financial information to Pretrial Services;

(h)　surrender his passport and not obtain a new passport from any country, and if his wife, child(ren) or parent(s) engage in any travel, must notify Pretrial Services in advance of their travel;

(i)　not travel outside the Eastern District of Michigan, Southern Division;

(j)　surrender any firearm(s) and not obtain or possess any firearm(s);

(k)　commit no other crimes;

(l)　not manage or invest in, nor have any other involvement in any health care entity or in the health care industry or directly or indirectly bill Medicaid or Medicare;

(m)　be subject to a $500,000 unsecured bond; and

(n)　be subject to all of the standard conditions or other conditions of release established by Pretrial Services.

IT IS FURTHER ORDERED that Defendant's Motion for Immediate Consideration [#79] is GRANTED.

IT IS ORDERED.

Dated: August 4, 2017
s/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 4, 2017, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager