UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

v.

D-1 Mashiyat Rashid,

Defendant.

No. 17-cr-20465
Hon. Denise Page Hood

Offense:    18 U.S.C. § 1349
            18 U.S.C. § 1957

Maximum Sentence:
18 U.S.C. § 1349: 20 years / $250,000
fine or twice the gain/loss
18 U.S.C. § 1957: 10 years / $250,000
fine or twice the gain/loss

---

## Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant Mashiyat Rashid (the "defendant" or "Rashid") and the United States agree as follows:

1. **GUILTY PLEA**

   A. **Count of Conviction**

   The defendant will enter a plea of guilty to Counts One and Nine of the Superseding Indictment. Count One charges Conspiracy to Commit Health Care Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349, and for which the penalty is a statutory maximum of 20 years' imprisonment, a fine that is greater of

GOVERNMENT
EXHIBIT

1

$250,000 or twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571, and a three-year term of supervised release.

Count 9 charges Money Laundering, in violation of 18 U.S.C. § 1957, and for which the penalty is a statutory maximum of 10 years' imprisonment, a fine that is greater of $250,000 or twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571, and a three-year term of supervised release.

### B.    Elements of Offense

As set forth in Count One of the Superseding Indictment, the defendant is charged with conspiring to violate the health care fraud and wire fraud statutes.  The elements of Count One are as follows:

First:      That two or more persons conspired, or agreed, to commit the crime of health care fraud or wire fraud; and

Second:     That the defendant knowingly and voluntarily joined the conspiracy.

The health care fraud statute, 18 U.S.C. § 1347, makes it a federal offense for anyone, in connection with the delivery of any health care benefits, items, or services, to knowingly and willfully execute, or attempt to execute, a scheme or artifice:  (1) to defraud any health care benefit program; or (2) to obtain, by means of materially false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program.

2

The wire fraud statute, 18 U.S.C. § 1343, makes it a federal offense for anyone, having devised any scheme or artifice to defraud, to transmit or cause to be transmitted in interstate or foreign commerce a wire communication for the purpose of executing such scheme or artifice.

As set forth in Count Nine of the Superseding Indictment, the defendant is charged with engaging money laundering.  The elements of Count Nine are as follows:

| | |
|---|---|
| First: | The defendant must knowingly engage or attempt to engage in a monetary transaction; |
| Second: | The defendant must know that the transaction involved criminally derived property; |
| Third: | The criminally derived property must be of a value greater than $10,000; |
| Fourth: | The criminally derived property must also, in fact, have been derived from a specified unlawful activity; and |
| Fifth: | The monetary transaction must have taken place in the United States. |

**C.      Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for the defendant's guilty plea:

Beginning in or around 2008 and continuing through on or about July 12, 2017, Rashid knowingly and willfully conspired with others to devise a scheme to

defraud Medicare, in violation of 18 U.S.C. § 1349, and to commit wire fraud, in violation of 18 U.S.C. § 1343.  Medicare is a "health care benefit program" of the United States, as defined by 18 U.S.C. § 24, and affects commerce.

Rashid was the CEO of Tri-County Wellness and controlled, owned, and operated a network of medical providers in Michigan and Ohio, including Global Quality Inc., Aqua Therapy and Pain Management, Inc., Tri-County Physician Group, P.C., Tri-State Physician Group, P.C., New Center Medical, P.C., National Laboratories, Inc., and Nat Lab, Inc. (collectively referred to as the Tri-County Network).

As CEO of the Tri-County Network, Rashid conspired with Spilios Pappas ("Pappas"), Joseph Betro ("Betro"), Tariq Omar ("Omar"), Mohammed Zahoor ("Zahoor"), Francisco Patino ("Patino"), and other co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

4

Rashid obtained patients for the Tri-County Network by hiring physicians –
including Pappas, Betro, Omar, Zahoor, and Patino – to prescribe medically
unnecessary controlled substances, including Oxycodone, Hydrocodone, and
Oxymorphone, to Tri-County Network beneficiaries, some of whom were addicted
to opioids.  Rashid hired physicians to work only a few days a week in order to
limit the number of each physician's aggregate amount of opioid prescriptions and
evade detection by law enforcement.  Rashid also obtained patients by paying or
causing the payment of illegal kickbacks and bribes to (i) Medicare beneficiaries;
and (ii) recruiters, physicians, and others to refer Medicare beneficiaries to, or order
testing by, the Tri-County Network.

Rashid was aware that many of the patients who attended the medical clinics
in the Tri-County Network were particularly vulnerable due to age, economic
circumstances, medical condition, or opioid addiction.  Rashid, Pappas, Betro,
Omar, Zahoor, Patino, and others exploited this vulnerable patient population by
making medical treatment decisions based on financial reimbursement, regardless
of medical necessity.  Rashid paid bribes to Pappas, Betro, Omar, Zahoor, Patino,
and others to make medical treatment decisions based on financial reimbursement,
regardless of medical necessity, including by paying Pappas, Betro, Omar, Zahoor,
Patino, and others based on the volume and value of certain services that each billed
or caused to be billed by the Tri-County Network, regardless of medical necessity.

Rashid and others set forth a medical protocol for the Tri-County Network. The medical protocol was that doctors prescribed opioids and other controlled substances, but required patients to submit to facet joint injections and other injections in exchange for the opioids and other controlled substances. These facet joint injections and other injections were expensive, medically unnecessary, not eligible for Medicare reimbursement, and sometimes painful.

Pappas, Betro, Omar, Zahoor, Patino and others in the Tri-County Network agreed to administer and did administer this protocol. Pappas, Betro, Omar, Zahoor, Patino and others prescribed opioids and required vulnerable Medicare beneficiaries, including those addicted to opioids, to submit to expensive injections, even though the injections were medically unnecessary, sometimes painful, not eligible for Medicare reimbursement, and/or not provided as represented.

From in or around 2011 to in or around July 12, 2017, as part of the medical protocol, Rashid and others also required patients to provide a urine sample for testing. Pursuant to this protocol, Pappas, Betro, Omar, Zahoor, Patino and other physicians in the Tri-County Network also agreed to and did order quantitative urine drug testing for all or nearly all of their patients, even though that testing was medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

6

From in or around 2008 to in or around July 12, 2017, Rashid also solicited illegal kickbacks and bribes from individuals associated with US Home, Vitality, and Senior Link for physical therapy and home health referrals.

From in or around 2012 to in or around 2014, Rashid, Patino, and others solicited illegal kickbacks and bribes from individuals associated with Laboratory 1, Laboratory 2, and Marketing Company 1, in exchange for the referral of patients from the Tri-County Network and the ordering of urine drug testing to be conducted by Laboratory 1 and Laboratory 2.

Rashid and others also solicited illegal kickbacks and bribes from individuals associated with Laboratory 3, in exchange for the referral of patients from the Tri-County Network and the ordering of blood work testing to be conducted by Laboratory 3.  Rashid paid illegal kickbacks and bribes to Physician 1 and Physician 2 in exchange for their referral of blood work testing to Laboratory 3.

Rashid also received illegal kickbacks and bribes from (a) Dr. Ram Gunabalan and others associated with Dr. Gunabalan's businesses, (b) individuals associated with MRI Company 1; and (c) individuals associated with MRI Company 2, all in exchange for the referral of patients from the Tri-County Network and the ordering of MRI testing to be conducted by MRI Company 1 and MRI Company 2.  In regard to MRI Company 2, Rashid referred or caused the referral of patients from the Tri-County Network to MRI Company 2 in exchange

7

for the referral of patients and ordering of urine drug testing by individuals associated with MRI Company 2 to be conducted by Rashid's companies (National Laboratories and Nat Lab).

Rashid also solicited illegal kickbacks and bribes from Mohammed Zahoor in exchange for the referral of patients from the Tri-County Network to Advanced Sleep Nuerodiagnostic, a company owned or controlled by Zahoor, for medically unnecessary sleep studies and other services. Rashid, Zahoor, and others paid illegal kickbacks and bribes to Medicare beneficiaries to participate in sleep studies and other testing that was medically unnecessary, not eligible for Medicare reimbursement, and/or not provided.

Pappas, Betro, Omar, Zahoor, Patino and other physicians in the Tri-County Network made referrals and/or ordered the testing described on pages 7-8 of this Agreement, which were medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented. Rashid paid illegal kickbacks and bribes to physicians in the Tri-County Network to induce the referral of Medicare beneficiaries for home health and other services to providers specified by Rashid and arrange for, order, or cause the arranging for or ordering of home health, urine drug testing, ultrasounds, nerve conduction, EMG's, balance tests, MRI's, or other testing by providers specified by Rashid.

After the establishment of National Laboratories in 2014, Rashid and others paid illegal kickbacks and bribes in exchange for the referral of patients and ordering of drug testing to be conducted by National Laboratories and Nat Lab. Rashid paid these illegal kickbacks and bribes to Patient Recruiter 1, Patient Recruiter 2, and others.

Rashid knew that it was illegal under Michigan law for him to own a physician company because he was not a physician. Rashid also knew that it was illegal under the federal Anti-Kickback Statute to receive remuneration in exchange for the referral of patients from pain clinics that he owned or controlled to other providers that he owned or controlled. Rashid, Patino, Pappas, and others, through the use of interstate wires, concealed Rashid's illegal ownership of the Tri-County Network physician companies and violations of the Anti-Kickback Statute by submitting or causing the submission of false and fraudulent enrollment materials to Medicare that failed to disclose the ownership interest and managing control of Rashid and falsely represented that others, such as Patino and Pappas, owned and controlled the providers.

Rashid, Pappas, Betro, Omar, Zahoor, Patino, and others facilitated and concealed the scheme, and obstructed investigations, enrollment suspensions, and overpayment demands by the Program Safeguard Contractor, ZPIC, and other law enforcement agencies by (a) making false statements and submitting or causing the

9

submission of falsified documentation; and (b) after the Program Safeguard

Contractor or ZPIC determined that 100% of the claims by Global Quality and Tri-

County Physicians, and 95% of the claims submitted by National Laboratories,

were not eligible for Medicare reimbursement, creating new companies, obtaining

Medicare billing privileges, and submitting or causing the submission of false and

fraudulent claims through these new companies, in some instances changing only

the name of the company on the door to the medical practice and/or inventing new

suite numbers to conceal the continuation of the fraudulent practices at the same

location.

During the conspiracy charged in the Superseding Indictment, Rashid, Pappas,

Betro, Omar, Zahoor, Patino, and others submitted and caused the submission of false

and fraudulent claims through interstate wire to Medicare in an amount in excess of

$150 million for services and testing that were obtained through illegal kickbacks and

bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not

provided as represented.   The Tri-County Network was paid approximately

$49,457,829.50 as a result of the conspiracy charged in Count 1 of the Superseding

Indictment.   The Tri-County Network was paid approximately $1,939,088.19 in

illegal kickbacks and bribes.

As set forth in Count Nine of the Superseding Indictment, on or about April

13, 2016, Rashid knowingly engaged in the following monetary transaction by

through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the payment of funds, such property having been derived from a specified unlawful activity, that is, health care fraud and wire fraud: $6,600,000 wire transfer to account x4026.

After his arrest, Rashid violated his bond conditions by using his wife's telephone to direct intermediaries to make contact with witnesses and one co-defendant, Yasser Mozeb. Rashid was aware that this conduct constituted a violation of his conditions of release.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for the defendant's guilty plea to the charge against him. It does not include all of the facts known to him concerning criminal activity in which he and others engaged. The defendant makes this statement knowingly and voluntarily and because he is in fact guilty of the crime charged.

2.    **SENTENCING GUIDELINES**

A.    **Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence.

B.    **Agreed Guideline Range**

There are no sentencing guideline disputes, except in regard to one specific issue concerning the amount of loss: the government contends that the amount of loss is in excess of $150 million and defendant contends that the amount of loss is

$49,457,829.50.  The only issue regarding loss that is permitted to be litigated at sentencing is whether intended loss within the meaning of the Sentencing Guidelines should be calculated based on the higher of the billed or paid amount, as the government contends, or based only on the paid amount, as defendant contends.

Except as provided below, defendant's Guidelines range is life imprisonment (if the government's position on loss is accepted by the Court) or 292-365 months imprisonment (if the defendant's position on loss is accepted by the Court), as set forth on the attached worksheets.  If the Court finds:

1.    That the defendant's criminal history category is higher than reflected on the attached worksheets, or

2.    That the offense level should be higher because, after pleading guilty, the defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offenses; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than is recommended by the parties, then the higher guideline range becomes each party's recommended range.  However, if the Court finds that the defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected

12

in the attached worksheets, this paragraph does not authorize a corresponding increase in either party's recommended range. Neither party may take a position in this Court contrary to any position of that party reflected on the worksheets or worksheet addendum, except as necessary to the Court's determination regarding subsections 1) and 2), above.

3. **SENTENCE**

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

**A.** **Imprisonment**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the sentence of imprisonment in this case may not exceed the top of the sentencing guideline range recommended by the government as described in Paragraph 2B.

**B.** **Supervised Release**

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is three years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that result from any later revocation of supervised release.

### C.   Special Assessment

The defendant will pay a special assessment of $200.  The defendant is required to pay the special assessment immediately after sentence is imposed and provide a receipt to the United States Attorney's Office within 24 hours of sentencing.  The defendant is encouraged to voluntarily pay the special assessment before sentencing and bring the receipt to sentencing.

### D.   Fine

The Court may impose a fine in any amount up to $250,000, or twice the pecuniary gain or loss, pursuant to 18 U.S.C. § 3571(d).

### E.   Restitution

The Court shall order restitution to every identifiable victim of the defendant's offense.  The victims and the full amounts of restitution in this case are as follows:

U.S. Department of Health and Human Services: $51,396,917.70.

### F.   Forfeiture

Pursuant to 18 U.S.C. § 982(a)(7) and/or § 981(a)(1)(C) with 28 U.S.C. § 2461(c), Defendant agrees to forfeit to the United States his interest in all property, real and personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to Defendant's conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349, as charged in Count One of the Superseding

14

Indictment. Pursuant to 18 U.S.C. § 982(a)(1), Defendant agrees to forfeit to the United States his interest all property involved in, or traceable to property involved in, money laundering, in violation of 18 U.S.C. § 1957, as charged in Count Nine of the Superseding Indictment.

Specifically, Defendant agrees to forfeit to the United States his interest in the following:

a.   Real property located at 2990 W. Grand Boulevard, Detroit, Michigan, and being more fully described in the United States' Second Bill of Particulars (Dkt. # 132);

b.   Real property located at 2932-2942 West Grand Boulevard, Michigan and being more fully described in the United States' Second Bill of Particulars (Dkt. # 132);

c.   One Thousand Nine Hundred Seven Dollars and Eighty-Seven Cents ($1,907.87) in funds from Bank of America Checking Account No. 3750-1329-2899, held in the name of National Laboratories;

d.   One Thousand Two Hundred Sixty One Dollars and Thirty Cents ($1,261.30) in funds from Credit Union One Checking Account No. 3002070104, held in the name of Tri-County Physicians Group;

e.   Six Hundred Forty Seven Dollars and Eighty-Three Cents ($647.83) in funds from Bank of America Checking Account No. 3750-1670-2991, held in the name of Tri-County Physicians Group;

f.   One Hundred Twenty Four Thousand Sixty-Four Dollars and Eighty Cents ($124,064.80) in funds from Bank of America Checking Account No. 3750-1878-7312, held in the name of Tri-State Physicians Group, PC;

g.   Forty Two Thousand Seven Hundred Thirty Seven Dollars and Seventy-Five Cents ($42,737.75) in funds from Bank of America

Checking Account No. 3750-1878-7299, held in the name of New Center Medical, PC;

h.    One Thousand Four Hundred Eighty Five Dollars and Twenty-Five Cents ($1,485.25) in funds from Credit Union One Joint Checking Account No. 3002070088, held in the name of Tri-County Wellness;

i.    Twenty One Thousand Six Hundred Sixty Two Thousand Dollars and Twenty Cents ($21,662.20) in funds from Bank of America Checking Account No. 3750-1603-4737, held in the name of Tri-County Wellness;

j.    Sixty Four Thousand Six Hundred Eighty Dollars and Four Cents ($64,680.04) in funds from Bank of America Account No. 3750-1213-3302, held in the name of Mashiyat Rashid;

k.    Three Million Six Hundred Fifty Thousand Four Hundred Thirteen Dollars and Twenty-One Cents ($3,650,413.21) in funds from Bank of America Money Market Savings Account No. 3750-0935-8653 held in the name of Mashiyat Rashid;

l.    Five Hundred and Eight Thousand Four Hundred Dollars ($508,400) in U.S. Currency;

m.    All Funds on Deposit and All Other Items of Value in E-Trade IRA Account Number 35950075 (Approximately $25,568.16 value, as of August 27, 2018);

n.    All Funds on Deposit and All Other Items of Value in U.S. Trust-Bank of America Private Wealth Management Account No. 56-01-100-3334026 (Approximately $6,764,801.27 value, as of August 15, 2018);

o.    All Funds on Deposit and All Other Items of Value in Bank of America Checking Account No. 3750-1869-2025 ($160,875.71);

p.    All Funds on Deposit and All Other Items of Value in Bank of America Account No. 3750-1399-8481($25,020.61); and

16

q.    All Funds on Deposit and All Other Items of Value in Bank of
      America Account No. 3750-1869-2740 ($162,778.35);

r.    $2000 Cash in lieu of Detroit Pistons Full Season Ticket Membership
      #6135954, specifically including a license to use tickets for seats 11,
      12, 13, 14, in Row 17, Section 121, for all Detroit Pistons games at
      Little Caesars Arena during the 2017-2018 NBA regular season.

In addition, Defendant agrees to the entry of a forfeiture money judgment

against him in favor of the United States in the amount of $51,396,917.70,

representing the total value of the property subject to forfeiture for Defendant's

violation of Count One of the Superseding Indictment, to the extent such value is

not satisfied by the specific forfeitures set forth above.

Defendant agrees that the forfeiture money judgment may be satisfied, to

whatever extent possible, from any property owned or under the control of

Defendant.  To satisfy the money judgment, Defendant explicitly agrees to the

forfeiture of any assets as he has now, or may later acquire, as substitute assets

under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the

forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant agrees to the entry of one or more orders of forfeiture

incorporating forfeiture of the assets enumerated in this section and the above-

referenced money judgment, including the Court's prompt entry of a Preliminary

Order of Forfeiture, following Defendant's guilty plea, upon application by the

United States, at, or any time before, his sentencing in this case, as mandated by

17

Fed. R. Crim. P. 32.2.  Defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by the Government.

Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver clear title to property subject to forfeiture under this agreement to the United States and will execute such legal documents as may be required to transfer rights, title, and ownership to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted, or otherwise made unavailable for forfeiture.

Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), or otherwise, at the time of his guilty plea is accepted.

In entering into this agreement with respect to forfeiture, Defendant knowingly, voluntarily, and intelligently waives any Double Jeopardy challenge, or any other challenge to the above-described forfeiture based on the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Defendant also agrees that Defendant shall assist the United States in all proceedings, whether administrative or judicial, involving the forfeiture, disgorgement, transfer, or surrender of all rights, title, and interest, regardless of their nature of form, in the property that Defendant has agreed to forfeit, disgorge,

transfer, or surrender, and any other assets, including real and personal property, cash, and other monetary instruments, wherever located, which Defendant or others to his knowledge have accumulated as a result of illegal activities.

Such assistance will include agreement by Defendant's heirs, successors, and assigns, to forfeiture, disgorgement, transfer, or surrender, to any interest in the above-described forfeiture. Such assistance will further involve an agreement by Defendant to the entry of an order enjoining the transfer or encumbrance of assets that may be identified as being subject to forfeiture, disgorgement, transfer, or surrender.

Defendant also agrees to identify all assets over which he exercises control, directly or indirectly, or has exercised such control, within the past five years. He will identify all assets in which he has or had during that time any financial interest will provide all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds, and any and all other documents necessary to deliver good and marketable title to said property. Defendant agrees to take all steps as requested by the government to obtain from any other parties by any lawful means any records of assets owner at any time by Defendant. He also agrees to undergo any polygraph examination the government may choose to administer concerning such assets and to provide and/or consent to the release of his tax returns for the previous five years.

<u>Non-Abatement of Criminal Forfeiture</u>: Defendant agrees the forfeiture provisions of this Plea Agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors, and assigns, until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

4.     **COOPERATION AGREEMENT**

The written cooperation agreement between the defendant and the government is part of this plea agreement.

5.     **EXCLUSION FROM THE MEDICARE PROGRAM AND OTHER HEALTH CARE PROGRAMS**

The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all federal health care programs.  The defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to the United States Department of Health and Human Services, to effectuate this exclusion within 60 days of receiving the documents.  This exclusion will not affect the defendant's right to apply for and receive benefits as a

beneficiary under any federal health care program, including Medicare and Medicaid.

## 6.   **COLLATERAL CONSEQUENCES OF CONVICTION**

Defendant understands that his conviction here may carry additional consequences under federal and state law, including the potential loss of the right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. Defendant further understands that, if he is not a native-born citizen of the United States, there may be adverse immigration consequences resulting from conviction. These include possible removal from the United States, denial of citizenship, denaturalization, denied admission to the United States in the future and other possible consequences. Defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of defendant's conviction on any of these matters. Defendant nevertheless affirms that he chooses to plead guilty regardless of any immigration consequences or other collateral consequences of his conviction.

## 6.   **USE OF WITHDRAWN GUILTY PLEA**

If the Court allows the defendant to withdraw his guilty plea for a "fair and just reason," pursuant to Fed. R. Crim. P. 11(d)(2)(B), the defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any

statement made under oath at the plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

7.   **RIGHT TO WITHDRAW**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than is determined by Paragraph 2B. The defendant may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Part 3. This is the only reason for which the defendant may withdraw from this agreement. The Court shall advise the defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than the maximum allowed by Part 3.

8.   **APPEAL WAIVER**

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the maximum allowed by Part 3 of this agreement, the defendant also waives any right he may have to appeal his sentence on any grounds. If the defendant's sentence of imprisonment is within the guideline range determined by Paragraph 2B, the government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range. In addition to the foregoing provisions, the defendant hereby waives all rights to argue on appeal that the statute to which the defendant is

22

pleading guilty is unconstitutional and that the admitted conduct does not fall within the scope of the statute.  This waiver shall not be construed to bar a claim by the defendant of ineffective assistance of counsel.

9.    **CONSEQUENCES OF WITHDRAWAL OF GUILTY PLEA/VACATION OF CONVICTION**

If the defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against the defendant within six months after the date of the order vacating the defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, the defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

10.   **PARTIES TO THE PLEA AGREEMENT**

Unless otherwise indicated, this agreement does not bind any government agency except the United States Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the Eastern District of Michigan.

11.   **SCOPE OF THE PLEA AGREEMENT**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties.  This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court.  Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if the defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

Matthew Schneider
United States Attorney

Date: 10/12/18

Wayne Pratt
Chief, Health Care Fraud Unit
United States Attorney's Office

24

Eastern District of Michigan

Date:  10/12 / 18

Malisa Dubal
Assistant Deputy Chief, Fraud Section
U.S. Department of Justice, Criminal
Division

Date:  10/12 / 18

Jacob Foster
Trial Attorney
Department of Justice
Criminal Division, Fraud Section

25

By signing below, the defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms.  He also acknowledges that he is satisfied with his attorney's advice and representation.  The defendant agrees that he has had a full and complete opportunity to confer with his lawyer and has had all of his questions answered by his lawyer.

_____
Gerald J. Gleeson II, Esq.
Attorney for Defendant

Date: 10/15/18

_____
Mashiyat Rashid
Defendant

10/15/18

# WORKSHEET A
## OFFENSE LEVEL

Defendant __Mashiyat Rashid (USA Worksheet)__     District/Office __Eastern District of Michigan__

Docket Number __17-20465__

Count Number(s) __1 & 9__     U.S. Code Title & Section __18__ : USC 1349 ; __18__ : USC 1957

*Guidelines Manual* Edition Used: 20__16__ (*Note:* The Worksheets are keyed to the November 1, 2016 *Guidelines Manual*)

### INSTRUCTIONS

Complete a separate Worksheet A for each count of conviction or as required in a situation listed at the bottom of Worksheet B.*
*Exceptions*: Use only a single Worksheet A where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (see §3D1.2(d)) or where a count of conspiracy, solicitation, or attempt is grouped with a substantive count that was the sole object of the conspiracy, solicitation, or attempt (see §3D1.2(a) & (b)).

### 1. Offense Level (See Chapter Two)

Enter the applicable base offense level and any specific offense characteristics from Chapter Two and explain the bases for these determinations. Enter the sum in the box provided.

| Guideline | Description | Level |
|---|---|---|
| 2B1.1(a)(2) | Base Offense Level | 7 |
| 2B1.1(b)(1) | Loss | 26 |
| 2B1.1(b)(7) | Health Care Fraud Enhancement | 4 |
| 2B1.1(b)(10) | Sophisticated Means | 2 |

If the Chapter Two guideline requires application of a cross reference or other reference, an additional Worksheet A may be needed for that analysis. *See* §1B1.5.     Sum **39**

### 2. Victim-Related Adjustments (See Chapter Three, Part A)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".     § 3A1.1 __   **4**

### 3. Role in the Offense Adjustments (See Chapter Three, Part B)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (–) sign in front of the adjustment. If no adjustment is applicable, enter "0".     § 3B1.1 __   **4**

### 4. Obstruction Adjustments (See Chapter Three, Part C)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".     §_____   **0**

### 5. Adjusted Offense Level

Enter the sum of Items 1–4. If this Worksheet A does not cover all counts of conviction or situations listed at the bottom of Worksheet B, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.     **47**

☐ Check here if all counts (*including* situations listed at the bottom of Worksheet B)* are addressed on this one Worksheet A. If so, no Worksheet B is used.

☑ If the defendant has no criminal history, enter "I" here and on Worksheet D, Item 4. No Worksheet C is used.

# WORKSHEET B
# MULTIPLE COUNTS*

Defendant __Mashiyat Rashid (USA Worksheet)__     Docket Number __17-20465__

## INSTRUCTIONS

**STEP 1:** Determine if any of the counts group under §3D1.2(a)–(d) ("the grouping rules"). All, some, or none of the counts may group. Some of the counts may have already been grouped in the application under Worksheet A, specifically: (1) counts grouped under §3D1.2(d); or (2) a count charging conspiracy, solicitation, or attempt that is grouped with the substantive count of conviction (*see* §3D1.2(a)). Explain the reasons for grouping:

The counts are grouped pursuant to 3D1.2(c) and 2S1.1 note 6.

**STEP 2:** Using the box(es) provided below, for each group of "closely related counts" (*i.e.*, counts that group together under any of the four grouping rules), enter the highest adjusted offense level from Item 5 of the various Worksheets "A" that comprise the group. *See* §3D1.3. Note that a "group" may consist of a single count that has not grouped with any other count. In those instances, the offense level for the group will be the adjusted offense level for the single count.

**STEP 3:** Enter the number of units to be assigned to each group (*see* §3D1.4) as follows:
- One unit (1) for the group of counts with the highest offense level
- An additional unit (1) for each group that is equally serious or 1 to 4 levels less serious
- An additional half unit (1/2) for each group that is 5 to 8 levels less serious
- No increase in units for groups that are 9 or more levels less serious

| | | | |
|---|---|---|---|
| **1. Adjusted Offense Level for the First Group of Counts** | | | |
| Count number(s) __1 & 9__ | | 47 | __1__ Unit |
| **2. Adjusted Offense Level for the Second Group of Counts** | | | |
| Count number(s) _____ | | | _____ Unit |
| **3. Adjusted Offense Level for the Third Group of Counts** | | | |
| Count number(s) _____ | | | _____ Unit |
| **4. Adjusted Offense Level for the Fourth Group of Counts** | | | |
| Count number(s) _____ | | | _____ Unit |
| **5. Adjusted Offense Level for the Fifth Group of Counts** | | | |
| Count number(s) _____ | | | _____ Unit |
| **6. Total Units** | | | 1 **Total Units** |

**7. Increase in Offense Level Based on Total Units** (See §3D1.4)

| | | | |
|---|---|---|---|
| 1 unit: | no increase | 2½ – 3 units: | add 3 levels |
| 1½ units: | add 1 level | 3½ – 5 units: | add 4 levels |
| 2 units: | add 2 levels | More than 5 units: | add 5 levels |

`0`

**8. Highest of the Adjusted Offense Levels from Items 1–5 Above**

`47`

**9. Combined Adjusted Offense Level** (See §3D1.4)

Enter the sum of Items 7 & 8 here and on Worksheet D, Item 1.

`47`

*Note: Worksheet B also includes applications that are done "as if there were multiple counts of convictions," including: multiple-object conspiracies (*see* §1B1.2(d)); offense guidelines that direct such application (e.g., §2G2.1(d)(1) (Child Porn Production)); and stipulations to additional offenses (*see* §1B1.2(c)). Note also that these situations typically require the use of multiple Worksheets A.

# WORKSHEET C
# CRIMINAL HISTORY
[Page 1 of 2]

Defendant __Mashiyat Rashid (USA Worksheet)__     Docket Number __17-20465__

*Note:* As an aid, some of the basic criminal history "rules" are listed below. However, there are numerous additional criminal history rules at §§4A1.1 and 4A1.2 that must be used with Worksheet C and for correct application.

**Enter the Earliest Date of the Defendant's Relevant Conduct** _____
(The date of *the defendant's commencement of the instant offense*(s))

### 1. Prior Sentences Resulting from Offenses Committed Prior to the Defendant's 18th Birthday

- (a) **3 Points** if convicted as an *adult*, for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(d)(1) & (e)(1).

- (b) **2 Points** for each prior *adult or juvenile sentence* of confinement of *at least 60 days* not counted under §4A1.1(a) imposed within 5 years or from which the defendant was released from confinement within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(d)(2)(A).

- (c) **1 Point** for each prior *adult or juvenile sentence* not counted under §4A1.1(a) or §4A1.1(b) imposed within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(d)(2)(B).

*Note:* Identify as "**adult**" any sentence exceeding one year and one month that resulted from an adult conviction.
A **release date** is required in only two instances: (1) when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to the defendant's earliest date of relevant conduct but resulted in the defendant being incarcerated during any part of such 15-year period; or (2) when a sentence counted under §4A1.1(b) was imposed more than 5 years prior to the defendant's earliest date of relevant conduct, but release from confinement occurred within such 5-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### 2. Prior Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday

- (a) **3 Points** for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(e)(1).

- (b) **2 Points** for each prior sentence of imprisonment of *at least 60 days* not counted under §4A1.1(a) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(e)(2).

- (c) **1 Point** for each prior sentence not counted under §4A1.1(a) or §4A1.1(b) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(e)(2).

*Note:* A **release date** is required when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to the defendant's earliest date of relevant conduct but resulted in the defendant being incarcerated during any part of such 15-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# Worksheet C — Criminal History [Page 2 of 2]

Defendant __Mashiyat Rashid (USA Worksheet)__          Docket Number __17-20465__

(continued from *Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday*)

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**3. Sum of Criminal History Points for prior sentences under §4A1.1(a), (b), & (c) in Items 1 & 2**

A total of 4 points can be added for all the 1-Point sentences counted in Items 1 & 2 combined.

**4. "Status" of Defendant at Time of Instant Offense**

**2 Points** for "status" if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence (*e.g.*, probation, parole, supervised release, imprisonment, work release, or escape status) for a sentence counted in Items 1 or 2. *See* §4A1.1(d) and Application Note 4. List the type of control and identify the counted sentence that resulted in the control. Otherwise, enter **0 Points**.

**5. Crimes of Violence**

**1 Point** for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under §4A1.1(a), (b), or (c) because such sentence was counted as a single sentence which also included another sentence resulting from a conviction for a crime of violence. A total of 3 points can be added under this subsection. *See* §4A1.1(e) and Application Note 6, and §4A1.2(a)(2) & (p). Identify the crimes of violence and briefly explain why the cases are considered a single sentence. Otherwise, enter **0 Points**.

**6. Total Criminal History Points (Sum of Items 3–5)**

**7. Criminal History Category (Enter here and on Worksheet D, Item 4)**

| Total Points | Criminal History Category |
|---|---|
| 0–1 | I |
| 2–3 | II |
| 4–6 | III |
| 7–9 | IV |
| 10–12 | V |
| 13 or more | VI |

# WORKSHEET D

## DETERMINING THE SENTENCE

### [Page 1 of 4]

Defendant __Mashiyat Rashid (USA Worksheet)__          Docket Number __17-20465__

---

1. **Adjusted Offense Level** (From Worksheet A or B)

   If Worksheet B is required, enter the result from Worksheet B, Item 9. Otherwise, enter the result from Worksheet A, Item 5.

   | 47 |

2. **Acceptance of Responsibility** (See Chapter Three, Part E)

   Enter the applicable reduction of 2 or 3 levels. If no adjustment is applicable, enter "0".

   | – 3 |

3. **Offense Level Total** (Item 1 less Item 2)

   | 44 |

4. **Criminal History Category** (From Worksheet A or C)

   Enter the result from Worksheet C, Item 8, unless the defendant has no criminal history, and as directed at the bottom of Worksheet A, no Worksheet C is used and "I" is entered here.

   | I |

5. **Terrorism; Career Offender; Criminal Livelihood; Armed Career Criminal; Repeat and Dangerous Sex Offender** (See Chapter Three, Part A, and Chapter Four, Part B)

   a. **Offense Level Total**

   If the provision for Career Offender (§4B1.1), Criminal Livelihood (§4B1.3), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in an offense level total higher than Item 3, enter the offense level total. Otherwise, enter "N/A".

   | N/A |

   b. **Criminal History Category**

   If the provision for Terrorism (§3A1.4), Career Offender (§4B1.1), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in a criminal history category higher than Item 4, enter the applicable criminal history category. Otherwise, enter "N/A".

   | N/A |

6. **Guideline Range from Sentencing Table**

   Enter the applicable guideline range from Chapter Five, Part A, in months.

   | Life   to Life |

7. **Restricted Guideline Range** (See Chapter Five, Part G)

   If the statutorily authorized maximum sentence or the statutorily required minimum sentence restricts the guideline range (Item 6) (see §§5G1.1 and 5G1.2), enter either the restricted guideline range or any statutory maximum or minimum penalty that would modify the guideline range. Otherwise, enter "N/A".

   | N/A   to 360 |

   ☐ Check here if §5C1.2 (Limitation on Applicability of Statutory Minimum Penalties in Certain Cases) and 18 U.S.C. § 3553(e) – "The Safety Valve" – are applicable.

8. **Undischarged Term of Imprisonment; Anticipated State Term of Imprisonment** (See §5G1.3)

   ☐ If the defendant is subject to an undischarged term of imprisonment, or an anticipated state term of imprisonment, check this box. Below list the undischarged/anticipated term(s), the applicable section of §5G1.3 and its direction or guidance as to whether the instant federal sentence is to be imposed to run concurrently or consecutively to the undischarged/anticipated term(s), and any sentence adjustment.

   _____

   _____

   _____

# Worksheet D — Determining the Sentence [Page 2 of 4]

Defendant __Mashiyat Rashid (USA Worksheet)__     Docket Number __17-20465__

## 9. Sentencing Options (See Chapter Five, Sentencing Table and §§5B1.1(a) and 5C1.1)

Check the applicable box that corresponds to the Guideline Range entered in Item 6 or Item 7, if applicable.

☐ **Zone A (See §§5B1.1(a)(1) & 5C1.1(a) & (b))**

If checked, the following options are available:

- Fine (See §§5C1.1(b) & 5E1.2(a))
- "Straight" Probation (See §§5B1.1(a)(1) & 5C1.1(b))
- Imprisonment (See §5C1.1(a) & (c)(1))

☐ **Zone B (See §§5B1.1(a)(2) & 5C1.1(a) & (c))**

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (c)(2))
- Imprisonment of *at least one month plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(c)(2))
- Probation with a condition that substitutes intermittent confinement, community confinement, or home detention for imprisonment (See §§5B1.1(a)(2) and 5C1.1(c)(3))

☐ **Zone C (See §5C1.1(a) & (d))**

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (d)(1))
- Imprisonment of *at least one-half of the minimum term plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(d)(2))

☑ **Zone D (See §5C1.1(a) & (f))**

If checked, *the minimum term is to be satisfied by* a sentence of imprisonment

## 10. Length of Term of Probation (See §5B1.2)

If probation is imposed, the guideline for the length of such term of probation is: (Check the applicable box)

☑ At least one year, but not more than five years if the offense level total is 6 or greater.

☐ No more than three years if the offense level total is 5 or less.

# Worksheet D — Determining the Sentence [Page 3 of 4]

Defendant <u>Mashiyat Rashid (USA Worksheet)</u>     Docket Number <u>17-20465</u>

## 11. Supervised Release (See §§5D1.1 and 5D1.2)

**a. Imposition of a Term of Supervised Release:**

☐ Ordered because required by statute (See §5D1.1(a)(1)).

☑ Ordered because a sentence of imprisonment of more than one year is imposed (See §5D1.1(a)(2)).

☐ Is *not* ordered although a sentence of more than one year is imposed, because it is not required by statute *and* the defendant likely will be deported after imprisonment (See §5D1.1(c)).

☐ Ordered because it may be ordered in any other case (See §5D1.1(b)).

**b. Length of Term of Supervised Release**

Check the Class of the Offense:

☐ Class A or B Felony: Two to Five Year Term (See §5D1.2(a)(1))

☑ Class C or D Felony: One to Three Year Term (See §5D1.2(a)(2))

☐ Class E Felony or Class A Misdemeanor: One Year Term (See §5D1.2(a)(3))

☐ If a statutorily required mandatory minimum term of supervised release for the offense impacts the guideline range for the applicable Class of Offense above, also check this box, and list the statutory minimum term (See §5D1.2(c)):

_____ years mandatory minimum term of supervised release

☐ If an offense in 18 U.S.C. § 2332b(g)(5)(B) that resulted in, or created a foreseeable risk of, death or serious bodily injury to another person; or if a sex offense, the term of supervised release will not be less than the minimum term established above, and may be up to life (See §5D1.2(b)).

Policy Statement: If a sex offense, the *statutory maximum term* of supervised release is recommended.

## 12. Restitution (See §5E1.1)

a. If restitution is applicable, enter the amount. Otherwise enter "N/A" and the reason:
$51,396,917.70

b. Enter whether restitution is statutorily mandatory or discretionary:
Mandatory

c. Enter whether restitution is by an order of restitution, or *solely* as a condition of supervision. Enter the authorizing statute:
Order of restitution -- 18 USC 3663A

# Worksheet D — Determining the Sentence [Page 4 of 4]

Defendant **Mashiyat Rashid (USA Worksheet)**        Docket Number **17-20465**

## 13. Fines (The Guideline Range for Fines for Individual Defendants) (See §5E1.2)

|  |  | Minimum | Maximum |
|---|---|---|---|
| a. | **Special Fine Provisions** | | |

☑ Check box if any of the counts of conviction is for a statute with a special fine provision. (This **does not** include the general fine provisions of 18 USC § 3571(b)(2) & (d)).

Enter the sum of statutory maximum fines for all such counts.            $250,000

b.  **Fine Table (§5E1.2(c)(3))**
Enter the minimum and maximum fines.        $50,000        $500,000

c.  **Fine Guideline Range**
(Determined by the minimum of the Fine Table (Item 15(b)) and the greater maximum above (Item 15(a) or 15(b))).        $50,000        $250,000

d.  **Ability to Pay**

☐ Check this box if the defendant does not have an ability to pay.

## 14. Special Assessments for Individual Defendants (See §5E1.3)

Enter the total amount of the statutory special assessments required for all counts of conviction:
- $100 for each felony count of conviction.
- $25 for each Class A misdemeanor count of conviction.
- While not subject to guideline sentencing, the special assessments for a Class B misdemeanor, and a Class C misdemeanor or infraction are $10 and $5 per count, respectively.

**TOTAL:**        $200

## 15. Factors That May Warrant a Departure (See §1B1.1(b))

Consider Chapter Five, Part H (Specific Offender Characteristics) and Part K (Departures), and other policy statements and commentary in the *Guidelines Manual* that might warrant consideration in sentencing. (*See also* the "List of Departure Provisions" included in the *Guidelines Manual* after the Index).

_____

_____

_____

## 16. Factors That May Warrant a Variance (See §1B1.1(c))

Consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole.

_____

_____

_____

_____

Completed by **Jacob Foster**        Date **9/20/2018**

# WORKSHEET A
## OFFENSE LEVEL

Defendant __Mashiyat Rashid__                                    District/Office __Eastern District of Michigan__

Docket Number __17-20465__

Count Number(s) __1 & 9__          U.S. Code Title & Section __18__ : USC __1349__ ;  __18__ : USC __1957__

*Guidelines Manual* Edition Used: 20__16__ (Note: The Worksheets are keyed to the November 1, 2016 *Guidelines Manual*)

### INSTRUCTIONS

Complete a separate Worksheet A for each count of conviction or as required in a situation listed at the bottom of Worksheet B.*
*Exceptions*: Use only a single Worksheet A where the offense level for a group of closely related counts is based primarily on
aggregate value or quantity (*see* §3D1.2(d)) or where a count of conspiracy, solicitation, or attempt is grouped with a substantive
count that was the sole object of the conspiracy, solicitation, or attempt (*see* §3D1.2(a) & (b)).

### 1. Offense Level (See Chapter Two)

Enter the applicable base offense level and any specific offense characteristics from Chapter Two and explain the
bases for these determinations. Enter the sum in the box provided.

| Guideline | Description | Level |
|---|---|---|
| 2B1.1(a)(2) | Base Offense Level | 7 |
| 2B1.1(b)(1) | Loss | 22 |
| 2B1.1(b)(7) | Health Care Fraud Enhancement | 4 |
| 2B1.1(b)(10) | Sophisticated Means | 2 |
| | | |

If the Chapter Two guideline requires application of a cross reference or other
reference, an additional Worksheet A may be needed for that analysis. *See* §1B1.5.          Sum  **35**

### 2. Victim-Related Adjustments (See Chapter Three, Part A)

Enter the applicable section and adjustment. If more than one section is applicable,
list each section and enter the combined adjustment. If no adjustment is applicable,
enter "0".                                                                 § 3A1.1    **4**

### 3. Role in the Offense Adjustments (See Chapter Three, Part B)

Enter the applicable section and adjustment. If more than one section is applicable,
list each section and enter the combined adjustment. If the adjustment reduces the
offense level, enter a minus (–) sign in front of the adjustment. If no adjustment is
applicable, enter "0".                                                      § 3B1.1    **4**

### 4. Obstruction Adjustments (See Chapter Three, Part C)

Enter the applicable section and adjustment. If more than one section is applicable,
list each section and enter the combined adjustment. If no adjustment is applicable,
enter "0".                                                                 § _____    **0**

### 5. Adjusted Offense Level

Enter the sum of Items 1–4. If this Worksheet A does not cover all counts of conviction or situations
listed at the bottom of Worksheet B, complete Worksheet B. Otherwise, enter this result on
Worksheet D, Item 1.                                                                         **43**

☐   Check here if all counts (*including* situations listed at the bottom of Worksheet B)* are addressed on this one
Worksheet A. If so, no Worksheet B is used.

☑   If the defendant has no criminal history, enter "I" here and on Worksheet D, Item 4. No Worksheet C is used.

# WORKSHEET B
## MULTIPLE COUNTS*

Defendant _Mashiyat Rashid_      Docket Number _17-20465_

### INSTRUCTIONS

**STEP 1:** Determine if any of the counts group under §3D1.2(a)–(d) ("the grouping rules"). All, some, or none of the counts may group. Some of the counts may have already been grouped in the application under Worksheet A, specifically: (1) counts grouped under §3D1.2(d); or (2) a count charging conspiracy, solicitation, or attempt that is grouped with the substantive count of conviction (see §3D1.2(a)). Explain the reasons for grouping:

The counts are grouped pursuant to 3D1.2(c) and 2S1.1 note 6.

**STEP 2:** Using the box(es) provided below, for each group of "closely related counts" (i.e., counts that group together under any of the four grouping rules), enter the highest adjusted offense level from Item 5 of the various Worksheets "A" that comprise the group. See §3D1.3. Note that a "group" may consist of a single count that has not grouped with any other count. In those instances, the offense level for the group will be the adjusted offense level for the single count.

**STEP 3:** Enter the number of units to be assigned to each group (see §3D1.4) as follows:
- One unit (1) for the group of counts with the highest offense level
- An additional unit (1) for each group that is equally serious or 1 to 4 levels less serious
- An additional half unit (1/2) for each group that is 5 to 8 levels less serious
- No increase in units for groups that are 9 or more levels less serious

| 1. Adjusted Offense Level for the First Group of Counts | | |
|---|---|---|
| Count number(s) _1 & 9_ | 43 | 1 Unit |

| 2. Adjusted Offense Level for the Second Group of Counts | | |
|---|---|---|
| Count number(s) _____ | | ____ Unit |

| 3. Adjusted Offense Level for the Third Group of Counts | | |
|---|---|---|
| Count number(s) _____ | | ____ Unit |

| 4. Adjusted Offense Level for the Fourth Group of Counts | | |
|---|---|---|
| Count number(s) _____ | | ____ Unit |

| 5. Adjusted Offense Level for the Fifth Group of Counts | | |
|---|---|---|
| Count number(s) _____ | | ____ Unit |

| 6. Total Units | |
|---|---|
| | 1 Total Units |

**7. Increase in Offense Level Based on Total Units** (See §3D1.4)

| 1 unit: | no increase | 2½ – 3 units: | add 3 levels | 0 |
|---|---|---|---|---|
| 1½ units: | add 1 level | 3½ – 5 units: | add 4 levels | |
| 2 units: | add 2 levels | More than 5 units: | add 5 levels | |

| 8. Highest of the Adjusted Offense Levels from Items 1–5 Above | |
|---|---|
| | 43 |

| 9. Combined Adjusted Offense Level (See §3D1.4) | |
|---|---|
| Enter the sum of Items 7 & 8 here and on Worksheet D, Item 1. | 43 |

*Note: Worksheet B also includes applications that are done "as if there were multiple counts of convictions," including: multiple-object conspiracies (see §1B1.2(d)); offense guidelines that direct such application (e.g., §2G2.1(d)(1) {Child Porn Production}); and stipulations to additional offenses (see §1B1.2(c)). Note also that these situations typically require the use of multiple Worksheets A.

# WORKSHEET C
## CRIMINAL HISTORY
### [Page 1 of 2]

Defendant **Mashiyat Rashid**          Docket Number **17-20465**

*Note:* As an aid, some of the basic criminal history "rules" are listed below. However, there are numerous additional criminal history rules at §§4A1.1 and 4A1.2 that must be used with Worksheet C and for correct application.

**Enter the Earliest Date of the Defendant's Relevant Conduct** _____
(The date of *the defendant's commencement of the instant offense(s)*)

## 1. Prior Sentences Resulting from Offenses Committed Prior to the Defendant's 18th Birthday

(a) **3 Points** if convicted as an *adult*, for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(d)(1) & (e)(1).

(b) **2 Points** for each prior *adult or juvenile sentence* of confinement of *at least 60 days* not counted under §4A1.1(a) imposed within 5 years or from which the defendant was released from confinement within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(d)(2)(A).

(c) **1 Point** for each prior *adult or juvenile sentence* not counted under §4A1.1(a) or §4A1.1(b) imposed within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(d)(2)(B).

*Note:* Identify as "adult" any sentence exceeding one year and one month that resulted from an adult conviction.
A **release date** is required in only two instances: (1) when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to the defendant's earliest date of relevant conduct but resulted in the defendant being incarcerated during any part of such 15-year period; or (2) when a sentence counted under §4A1.1(b) was imposed more than 5 years prior to the defendant's earliest date of relevant conduct, but release from confinement occurred within such 5-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## 2. Prior Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday

(a) **3 Points** for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(e)(1).

(b) **2 Points** for each prior sentence of imprisonment of *at least 60 days* not counted under §4A1.1(a) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(e)(2).

(c) **1 Point** for each prior sentence not counted under §4A1.1(a) or §4A1.1(b) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(e)(2).

*Note:* A **release date** is required when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to the defendant's earliest date of relevant conduct but resulted in the defendant being incarcerated during any part of such 15-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# Worksheet C — Criminal History [Page 2 of 2]

Defendant ___Mashiyat Rashid___                    Docket Number ___17-20465___

(continued from *Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday*)

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**3. Sum of Criminal History Points for prior sentences under §4A1.1(a), (b), & (c) in Items 1 & 2**

A total of 4 points can be added for all the 1-Point sentences counted in Items 1 & 2 combined.

**4. "Status" of Defendant at Time of Instant Offense**

**2 Points** for "status" if the defendant committed any part of the instant offense (*i.e.,* any relevant conduct) while under any criminal justice sentence (*e.g.,* probation, parole, supervised release, imprisonment, work release, or escape status) for a sentence counted in Items 1 or 2. *See* §4A1.1(d) and Application Note 4. List the type of control and identify the counted sentence that resulted in the control. Otherwise, enter **0 Points.**

**5. Crimes of Violence**

**1 Point** for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under §4A1.1(a), (b), or (c) because such sentence was counted as a single sentence which also included another sentence resulting from a conviction for a crime of violence. A total of 3 points can be added under this subsection. *See* §4A1.1(e) and Application Note 6, and §4A1.2(a)(2) & (p). Identify the crimes of violence and briefly explain why the cases are considered a single sentence. Otherwise, enter **0 Points.**

**4. Total Criminal History Points** (Sum of Items 3-5)

**5. Criminal History Category** (Enter here and on Worksheet D, Item 4)

| Total Points | Criminal History Category |
|---|---|
| 0–1 | I |
| 2–3 | II |
| 4–6 | III |
| 7–9 | IV |
| 10–12 | V |
| 13 or more | VI |

# WORKSHEET D

## DETERMINING THE SENTENCE

[Page 1 of 4]

Defendant __Mashiyat Rashid__                           Docket Number __17-20465__

---

**1. Adjusted Offense Level** (From Worksheet A or B)

If Worksheet B is required, enter the result from Worksheet B, Item 9. Otherwise, enter the result from Worksheet A, Item 5.

> 43

**2. Acceptance of Responsibility** (See Chapter Three, Part E)

Enter the applicable reduction of 2 or 3 levels. If no adjustment is applicable, enter "0".

> − 3

**3. Offense Level Total** (Item 1 less Item 2)

> 40

**4. Criminal History Category** (From Worksheet A or C)

Enter the result from Worksheet C, Item 8, unless the defendant has no criminal history, and as directed at the bottom of Worksheet A, no Worksheet C is used and "I" is entered here.

> I

**5. Terrorism; Career Offender; Criminal Livelihood; Armed Career Criminal; Repeat and Dangerous Sex Offender** (See Chapter Three, Part A, and Chapter Four, Part B)

   **a. Offense Level Total**

   If the provision for Career Offender (§4B1.1), Criminal Livelihood (§4B1.3), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in an offense level total higher than Item 3, enter the offense level total. Otherwise, enter "N/A".

   > N/A

   **b. Criminal History Category**

   If the provision for Terrorism (§3A1.4), Career Offender (§4B1.1), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in a criminal history category higher than Item 4, enter the applicable criminal history category. Otherwise, enter "N/A".

   > N/A

**6. Guideline Range from Sentencing Table**

Enter the applicable guideline range from Chapter Five, Part A, in months.

> 292   to 365

**7. Restricted Guideline Range** (See Chapter Five, Part G)

If the statutorily authorized maximum sentence or the statutorily required minimum sentence restricts the guideline range (Item 6) (see §§5G1.1 and 5G1.2), enter either the restricted guideline range or any statutory maximum or minimum penalty that would modify the guideline range. Otherwise, enter "N/A".

> 292   to 360

☐ Check here if §5C1.2 (Limitation on Applicability of Statutory Minimum Penalties in Certain Cases) and 18 U.S.C. § 3553(e) – "The Safety Valve" – are applicable.

**8. Undischarged Term of Imprisonment; Anticipated State Term of Imprisonment** (See §5G1.3)

☐ If the defendant is subject to an undischarged term of imprisonment, or an anticipated state term of imprisonment, check this box. Below list the undischarged/anticipated term(s), the applicable section of §5G1.3 and its direction or guidance as to whether the instant federal sentence is to be imposed to run concurrently or consecutively to the undischarged/anticipated term(s), and any sentence adjustment.

_____

_____

_____

# Worksheet D — Determining the Sentence [Page 2 of 4]

Defendant **Mashiyat Rashid**

Docket Number **17-20465**

## 9. Sentencing Options (See Chapter Five, Sentencing Table and §§5B1.1(a) and 5C1.1)

Check the applicable box that corresponds to the Guideline Range entered in Item 6 or Item 7, if applicable.

☐ **Zone A** (See §§5B1.1(a)(1) & 5C1.1(a) & (b))

If checked, the following options are available:

- Fine (See §§5C1.1(b) & 5E1.2(a))
- "Straight" Probation (See §§5B1.1(a)(1) & 5C1.1(b))
- Imprisonment (See §5C1.1(a) & (c)(1))

☐ **Zone B** (See §§5B1.1(a)(2) & 5C1.1(a) & (c))

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (c)(2))
- Imprisonment of *at least one month plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(c)(2))
- Probation with a condition that substitutes intermittent confinement, community confinement, or home detention for imprisonment (See §§5B1.1(a)(2) and 5C1.1(c)(3))

☐ **Zone C** (See §5C1.1(a) & (d))

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (d)(1))
- Imprisonment of *at least one-half of the minimum term plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(d)(2))

☑ **Zone D** (See §5C1.1(a) & (f))

If checked, *the minimum term is to be satisfied by* a sentence of imprisonment

## 10. Length of Term of Probation (See §5B1.2)

If probation is imposed, the guideline for the length of such term of probation is: (Check the applicable box)

☑ At least one year, but not more than five years if the offense level total is 6 or greater.

☐ No more than three years if the offense level total is 5 or less.

# Worksheet D — Determining the Sentence [Page 3 of 4]

Defendant <u>Mashiyat Rashid</u>                     Docket Number <u>17-20465</u>

## 11. Supervised Release (See §§5D1.1 and 5D1.2)

**a. Imposition of a Term of Supervised Release:**

- [ ] Ordered because required by statute (*See* §5D1.1(a)(1)).

- [✔] Ordered because a sentence of imprisonment of more than one year is imposed (*See* §5D1.1(a)(2)).

- [ ] Is *not* ordered although a sentence of more than one year is imposed, because it is not required by statute *and* the defendant likely will be deported after imprisonment (*See* §5D1.1(c)).

- [ ] Ordered because it may be ordered in any other case (*See* §5D1.1(b)).

**b. Length of Term of Supervised Release**

Check the Class of the Offense:

- [ ] Class A or B Felony: Two to Five Year Term (*See* §5D1.2(a)(1))

- [✔] Class C or D Felony: One to Three Year Term (*See* §5D1.2(a)(2))

- [ ] Class E Felony or Class A Misdemeanor: One Year Term (*See* §5D1.2(a)(3))

- [ ] If a statutorily required mandatory minimum term of supervised release for the offense impacts the guideline range for the applicable Class of Offense above, also check this box, and list the statutory minimum term (*See* §5D1.2(c)):

  _____ years mandatory minimum term of supervised release

- [ ] If an offense in 18 U.S.C. § 2332b(g)(5)(B) that resulted in, or created a foreseeable risk of, death or serious bodily injury to another person; or if a sex offense, the term of supervised release will not be less than the minimum term established above, and may be up to life (*See* §5D1.2(b)).

  Policy Statement: If a sex offense, the *statutory maximum term* of supervised release is recommended.

## 12. Restitution (See §5E1.1)

**a.** If restitution is applicable, enter the amount. Otherwise enter "N/A" and the reason:

$51,396,917.70

**b.** Enter whether restitution is statutorily mandatory or discretionary:

Mandatory

**c.** Enter whether restitution is by an order of restitution, or *solely* as a condition of supervision. Enter the authorizing statute:

Order of restitution -- 18 USC 3663A

# Worksheet D — Determining the Sentence [Page 4 of 4]

Defendant  Mashiyat Rashid                              Docket Number  17-20465

## 13. Fines (The Guideline Range for Fines for Individual Defendants) (See §5E1.2)

|  |  | Minimum | Maximum |
|---|---|---|---|
| a. | **Special Fine Provisions** | | |

☑ Check box if any of the counts of conviction is for a statute with a special fine provision. (This **does not** include the general fine provisions of 18 USC § 3571(b)(2) & (d)).

Enter the sum of statutory maximum fines for all such counts.  $250,000

b. **Fine Table (§5E1.2(c)(3))**
Enter the minimum and maximum fines.  $50,000  $500,000

c. **Fine Guideline Range**
(Determined by the minimum of the Fine Table (Item 15(b)) and the greater maximum above (Item 15(a) or 15(b))).  $50,000  $250,000

d. **Ability to Pay**
☐ Check this box if the defendant does not have an ability to pay.

## 14. Special Assessments for Individual Defendants (See §5E1.3)

Enter the total amount of the statutory special assessments required for all counts of conviction:
- $100 for each felony count of conviction.
- $25 for each Class A misdemeanor count of conviction.
- While not subject to guideline sentencing, the special assessments for a Class B misdemeanor, and a Class C misdemeanor or infraction are $10 and $5 per count, respectively.

**TOTAL:**  $200

## 15. Factors That May Warrant a Departure (See §1B1.1(b))

Consider Chapter Five, Part H (Specific Offender Characteristics) and Part K (Departures), and other policy statements and commentary in the *Guidelines Manual* that might warrant consideration in sentencing. (*See also* the "List of Departure Provisions" included in the *Guidelines Manual* after the Index).

_____

_____

_____

## 16. Factors That May Warrant a *Variance* (See §1B1.1(c))

Consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole.

_____

_____

_____

_____

Completed by  Jacob Foster                              Date  9/20/2018