# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                               Case No. 17-cr-20465

D-1 MASHIYAT RASHID,            Hon. Denise Page Hood

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) [ECF No. 748]

On July 27, 2022, Defendant filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [ECF No. 748] The Government filed a response, to which Defendant has replied.  For the reasons that follow, the Motion is denied.

**I.    Background**

Defendant has been detained since October 2017, when this Court determined that Defendant was not complying with the conditions of his bond and revoked his bond. ECF No. 170.  On October 15, 2018, Defendant pleaded guilty to Counts One and Nine of the Superseding Indictment.  Four of his co-defendants went to trial in February 2020, and Defendant testified on behalf of the Government at that trial.  All four of those co-defendants were convicted by a jury.  Defendant had not been

sentenced by the time that trial concluded because, with the agreement of the Government and the Court, Defendant was not to be sentenced until after the trial of Francisco Patino, a defendant in a related case.  A month after the trial of those four co-defendants, the Covid-19 pandemic commenced.  As a result, the Patino trial, as well as the sentencings of Defendant and the four co-defendants who went to trial, each of whom desired to be sentenced in person, were delayed.

The Court eventually scheduled the Patino jury trial for August-September 2021 (the first such criminal trial held in the Eastern District of Michigan after the onset of the Covid-19 pandemic).  By February 2021, however, Defendant could no longer wait to be sentenced, and he insisted on being sentenced as soon as possible.  The Court held a sentencing on March 3, 2021.  Despite a guideline range of 360 months, and the Government's request of 216 months after a 40% reduction of sentence from that guideline range due to Defendant's cooperation, the Court sentenced Defendant to a term of 180 months.   As of March 3, 2021, (a) none the four co-defendants who went trial had been sentenced, and (b) only one of Defendant's 14 co-defendants (Hina Qazi, a comparatively minor participant) had been sentenced.

## II. Analysis

When seeking a reduction in sentence for extraordinary and compelling reasons, a defendant must first exhaust all administrative remedies or wait 30 days after the warden's first receipt of the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). It is undisputed that Defendant has exhausted his administrative remedies through the Bureau of Prisons.

In resolving motions pursuant to 18 U.S.C. § 3582(c)(1)(A), district courts now face two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2) if so, whether the applicable § 3553(a) factors warrant such a reduction. *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1006-07 (6th Cir. 2020). A third consideration, the U.S.S.G. § 1B1.13 policy statement, is no longer a requirement courts must address in ruling on defendant-filed motions. *United States v. Elias*, 984 F.3d 516, 518–20 (6th Cir. 2021) (citing *Jones*, 980 F.3d at 1108); *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021); *United States v. Tomes*, 990 F.3d 500, 503, n.1 (6th Cir. 2021) (citations and internal quotations omitted) (a court "may look to § 1B1.13 as relevant, even if no longer binding," but "may not proceed as

3

though § 1B1.13 constrains its analysis of what constitutes extraordinary and compelling reasons for release.").

As to whether extraordinary and compelling circumstances exist to merit a sentence reduction in a case, the Sixth Circuit concluded that "in the absence of an applicable policy statement for inmate-filed compassionate release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 520. *See also Jones*, 980 F.3d at 1109; *United States v. McDonel*, 513 F.Supp.3d 752, 755 (E.D. Mich. 2021) (quoting *Elias*).

"Extraordinary" is defined as "exceptional to a very marked extent." Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of evidence." *Id.* A court in the Eastern District of Michigan has described the requirements of "'extraordinary' as beyond what is usual, customary, regular, or common," and "'compelling reason' as one so great that irreparable harm or injustice would result if the relief is not granted." *See United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) (citations omitted).

Defendant asserts that a sense of how those definitions apply in context can be found in the Senate Report that accompanied the Sentencing Reform Act.

4

Congress indicated that sentence modifications would be appropriate in "cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of ***an unusually long sentence***, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55-56 (1984) (emphasis added by Defendant). Defendant contends that a combination of his health conditions and the length of his sentence, which he contends is significantly longer than the sentences of his co-defendants and the average health care fraud sentence, constitute extraordinary and compelling circumstances justifying a reduction in his sentence.

### A. Health Conditions

Defendant has a number of health conditions, including obesity, asthma (for which he uses Albuterol daily), hypertension, and high cholesterol, all of which are conditions that may elevate risk while being incarcerated during the COVID-19 pandemic. Defendant argues that, in light of Covid-19, these types of health conditions have led to judges in districts throughout the United States to recognize that, at least for certain defendants, such conditions present "extraordinary and

5

compelling reasons" warranting a reduction in sentence under Section 3582(c)(1)(A)(i).

As the Government argues, however, every one of the 31 decisions Defendant cites to support that argument was issued in 2020 – before any vaccines were available to incarcerated persons. The Sixth Circuit has since concluded that, if a defendant has access to the vaccine, the COVID-19 pandemic itself does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Lemons,* 15 F. 4th 747, 751 (6th Cir. 2021). The Sixth Circuit stated:

> After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19. And at this intersection of law and science, we find wisdom in Judge Easterbrook's assessment that "for people living in close quarters, vaccines offer relief far more effective than a judicial order."

*Id.* (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)).

Many other courts have held that extraordinary and compelling circumstances are lacking, and a compassionate release is not warranted, based on the threat of Covid-19 alone, when a vaccine is available. *See, e.g., United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021); *United States v. Wills*, 2021 WL 2179256, at *1 (D. Or. May 27, 2021); *United States v. McBriarty*, 2021 WL

6

1648479, at *6 (D. Conn. Apr. 27, 2021); *Gale v. United States*, 2021 WL 1912380, at *3 (E.D. Va. May 12, 2021); *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021); *United States v. Jackson*, 2021 WL 3417910, at *3 (E.D. Mich. Aug. 5, 2021); *United States v. Swarn*, 2021 WL 4077344, at *2 (E.D. Mich. Sept. 8, 2021).

Defendant not only has had access to the Covid-19 vaccine, he has received it. The record reflects that Defendant received the initial two doses of the Moderna Covid-19 vaccine on April 20, 2021 and May 17, 2021, and he received a Moderna Covid-19 booster on December 28, 2021. ECF No. 757, PageID.10371. Defendant also acknowledges that he previously contracted and recovered from Covid-19 (the record does not indicate when that occurred).

Many defendants have been denied release pursuant to Section 3582(c)(1)(A)(i), even with health conditions similar to Defendant's, when they have had access to or received the Covid-19 vaccine, including if they have previously contracted the Covid-19 virus. *See, e.g.*, *United States v. Banks*, No. 18-cr-20462, 2022 WL 2679417 (E.D. Mich. July 11, 2022) (denying compassionate release to inmate suffering from COPD, lupus, high blood pressure, arthritis, and obesity because she had access to the COVID-19 vaccine); *United States v. Jackson*, No. 19-cr-20396, 2022 WL 107577 (E.D. Mich. Jan. 11, 2022) (denying

7

compassionate release to inmate with hypertension and asthma because he had received the COVID-19 vaccine); *United States v. Mukherjee*, No. 4-cr-50044, 2022 WL 2703955 (E.D. Mich. July 12, 2022) (denying compassionate release to 80-year-old defendant with hypertension, diabetes, obesity, kidney disease, and enlarged prostate because he had received the COVID-19 vaccine and recovered from a prior infection, such that his "proven resilience to COVID-19 belies the alleged comorbidity of his diagnoses.").

For the reasons stated, the Court concludes that Defendant has not, based on his health conditions, demonstrated an extraordinary and compelling reason for reducing his sentence.

### B. Disparity in Sentencing

Defendant contends that his sentence, as compared to the average health care fraud sentence and the sentences of his co-defendants – especially the four doctors who went to trial -- was unusually long and so disparate as to constitute an extraordinary and compelling reason to have his sentence reduced. Defendant cites the U.S. Sentencing Commission's "Quick Facts – Health Care Offenses" for fiscal year 2020. ECF No. 748, Ex. 6, PageID.10266-67. That summary reflects that the average sentence for health care fraud offenders was 30 months. *Id*. Defendant

8

argues that the 30-month figure is evidence that his sentence is disparate with respect to all defendants who were convicted of similar offenses.

Defendant asserts that the sentences for the four co-defendants who went to trial, each of whom was sentenced to 84, 96, or 108 months, exhibits the gross sentencing disparity within this case. Defendant claims that, even though he has been in prison for five years, those co-defendants will have served their sentences and be free before he is. Defendant argues that 18 U.S.C. § 3553(a) counsels against such unwarranted sentencing disparities.

The Court is not persuaded by Defendant's arguments and reasoning. First, and most significantly, Defendant was the mastermind and primary force behind the health care fraud scheme perpetrated in this case. Defendant established the business model and recruited physicians (and others) to carry out a system that, among other things: (a) harmed patients, both by utilizing painful facet injections to treat them and by providing them with opioids; (b) fraudulently billed Medicare over $150 million; and (c) allowed him to profit at significantly greater levels than his co-defendants, specifically, and health care fraud defendants, generally. For these reasons, the Court finds that Defendant is mistaken when he suggests that his offenses were similar to other health care fraud defendants, especially those

9

defendants who were sentenced in the vicinity of the average term of 30 months in prison.

Second, there are no co-defendants in this case who engaged in – or profited from – the Medicare fraud to the extent Defendant did. Only Defendant was involved throughout the scheme, and only Defendant profited from the fraudulent activity of all of the other co-defendants. Even the four co-defendant doctors who went to trial were responsible for far less fraudulent activity and harm inflicted on all of Tri-County's patients (admittedly, those four co-defendants violated their oath to patients and more directly inflicted pain on their patients). The only comparable defendant, Francisco Patino, was charged in a separate case, and the Court has not yet imposed sentence upon Mr. Patino. Mr. Patino, who is being held accountable for an intended loss of nearly $120 million (and an actual loss of nearly $30 million), is subject to a guideline range of 1020 months, so he may be facing a longer sentence than Defendant.

Third, and most critically, <u>at Defendant's insistence and despite being advised by the Court of possible sentence disparities that might result from being sentenced before his co-defendants who went to trial</u>, Defendant was sentenced before the Patino trial at which he was to testify (for which the Government may have requested

that the Court grant an even greater reduction in sentence) – and nearly a year before the Court sentenced any of the four co-defendants who went to trial. *See* ECF No. 583, PageID.7804-06, 7833-35 ("there is some inability of the Court to be able to make a determination about what those sentences might in fact might be" and the Court required that Defendant's counsel "acknowledge[e] that [the co-defendants who went to trial] have not yet been sentenced," so Defendant would be sentenced "without the benefit of knowing what [the Court] anticipate[s] [their] sentences would be").

Fourth, Defendant's arguments regarding the Government's role in sentencing are misplaced. Specifically, the Court rejects as irrelevant Defendant claims that the Government should be held to its word with respect to arguments the Government made to the Court that the co-defendants who went to trial should be given longer sentences than Defendant. The Court – not the Government – determines and imposes a defendant's sentence, so the fact that the Government urged the Court to impose a sentence of any duration is of no import in considering whether Defendant's sentence was grossly disparate to others.

Fifth, as to any disparity concerns *vis a vis* 18 U.S.C. § 3553(a), the Court addressed those factors when it sentenced Defendant on March 3, 2021. Defendant

11

has offered no evidence that the circumstances of any of the factors have changed, such that the Court needs to undertake a new analysis of those factors.

Sixth, Defendant generally ignores the fact that he was sentenced to half of the applicable guideline range relative to the crimes of which he was convicted. Defendant overlooks the fact that, even after the Government asked the Court to depart downward from the applicable sentencing guidelines by 40%, the Court departed downward even further and imposed a sentence that was 85% of what the Government requested.

Seventh, it is a simple matter of fact that the guideline range sentence for Defendant was 360 months, which was greater than the guideline range for each of the four co-defendants who went to trial (262-327 months) and the intended loss amount attributable to Defendant (over $150 million) was nearly 40% higher than that attributable to any of the four co-defendants (approximately $109 million each).

Finally, it is safe to say that few, if any, "average health care fraud defendant[s]" have been subject to a guideline range of approximately 360 months. It is widely recognized that "a sentence within the Sentencing Guidelines range generally furthers the goal of avoiding unwarranted sentencing disparities." *United States v. Westberry*, 2022 WL 1562364, at *3 (6th Cir. 2022). A sentence far below

the applicable guidelines range and the Government's recommendation does not strike the Court as a sentence of unwarranted disparity, nor "an unusually long sentence." Accordingly, the Court holds that the length of Defendant's sentence, even when viewed in light of Defendant's arguments, does not constitute an extraordinary and compelling reason to reduce his sentence.

### C. Conclusion

For the reasons stated above, the Court finds that, even when taking into consideration a combination of Defendant's health, the Covid-19 pandemic, and the length of Defendant's sentence, Defendant has not established an(y) extraordinary and compelling reason(s) to reduce his sentence.

### III. Conclusion

Accordingly,

IT IS ORDERED that Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF No. 748] is DENIED.

Dated: January 5, 2023            s/Denise Page Hood
                                  DENISE PAGE HOOD
                                  UNITED STATES DISTRICT JUDGE